446 P.2d 875

STATE of New Mexico, Plaintiff-Appellee,

v.

Daniel Arthur SISNEROS, Defendant-Appellant.

No. 8619.

Supreme Court of New Mexico.

Nov. 8, 1968.

Jonathan B. Sutin, Albuquerque, for appellant.

Boston E. Witt, Atty. Gen., Gary O. O'Dowd, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Judge, Court of Appeals.

Defendant was convicted on June 4, 1964, of murder in the second degree, and he is confined in the State Penitentiary. The case is now before us on appeal from an order denying his motion for post-conviction relief under Rule 93 [§ 21-1-1 (93), N.M.S.A.1953 (Supp.1967) ].

On January 26, 1961, he was fourteen years of age. Upon arriving home from junior high school on that date, he reported to his mother that he had been assaulted by two boys. The mother reported this claimed assault to the police, and about 4:00 p. m. a policeman called at the home to secure information of the details from defendant. The officer noticed that on some of defendant's clothing there were stains, which appeared to be blood. When asked by the officer about these stains, defendant stated they were blood. He claimed they were on his clothing by reason of bleeding by one of his assailants from an arm when struck by defendant with a stick.

About two hours later this same officer went to the home of another family in the area to check on the reported failure of a fourteen-year old girl to arrive home from the same junior high school attended by defendant. A search by the police, the girl's father, and others resulted in the discovery of her body at about 8:15 p. m. in a small arroyo or wash about ten or fifteen feet from the roadway. The body was covered with tumbleweeds, and the entire face and front portion of the head were severely crushed, mutilated and distorted.

A portion of a concrete block was resting on her head, and her entire head was covered with blood. Her panties were down and her other clothing raised, exposing her legs and other parts of her body, which were smeared with blood. The defendant, in his confessions later referred to herein, stated he was endeavoring to create the impression that she had been attacked and killed by a sex maniac.

The victim's school books and papers were lying on the road nearby and her violin was on an embankment across the road.

At about 11:00 p. m. two police officers went to the home of defendant's parents to question defendant further about the claimed assault upon him by two boys, and to question him about the girl's death. The parents admitted the police officers, and defendant's father and one of the police officers went to the bedroom where defendant was sleeping. He was awakened and then questioned. He contended his prior report about being assaulted by two boys was true. When asked about the girl, he said he had seen a television newscast at 10:00 p. m. concerning her death.

The officers asked about defendant's clothes, and his mother brought them from another room. The parents gave the officers permission to take the clothing with them. The stains on the clothing were subsequently examined for blood type, and it was determined that these stains were caused by Type A blood. The girl had Type A blood, and defendant's blood is Type O.

The officers, in addition to taking the clothing with them, also took defendant to the police station. On the way to the station they asked him if he knew the victim, and he denied knowing her. Defendant's parents also went to the police station.

At the station the parents gave permission for a doctor to take a blood sample from the defendant. Defendant made no protests and offered no resistance.

Defendant was warned of his rights to obtain counsel and to refrain from making any statement. He was then questioned and elected to confess to the commission of the crime. He gave a written statement to this effect, which statement was read to him and by him and which he signed. The interrogation of defendant at the station commenced at about 11:40 p. m. and the confession was given forty-five minutes later at about 12:25 a. m.

At about 10:15 a. m. on the same morning he was again advised of his rights to counsel and to remain silent, but elected to give a further confession to the juvenile authorities. On this occasion he was asked if he wanted his parents present and he answered, "No, I don't."

On a later occasion, and in the presence of his counsel, he admitted that the confession he had given the police was correct. He admitted as being untrue a subsequent version of the events surrounding the killing of the girl, which he had related to his attorney and to the district attorney's office, by which he sought to involve others, and in which he claimed he had been drinking and using narcotics. He stated that he was sorry that he had lied to his attorney and the district attorney's office.

There was testimony by psychiatrists called by defendant to the effect that he was insane at the time of the commission of the offense and at the time of trial, but the testimony submitted by the State was sufficiently substantial to justify the jury's resolution of these questions against the defendant.

Under his first point defendant contends his conviction was "based on confessions unconstitutionally obtained during custodial interrogation." His position is that his confessions were not voluntarily made, and that confessions by juveniles before being certified for criminal proceedings pursuant to the provisions of § 13–8–27, N.M.S.A.

1953 (Supp.1967), are not properly admissible. He relies upon his age, his mental condition, the fact that he was questioned during the night time, the fact that his parents were not present, and the fact that no probation officer or juvenile attorney was notified by the officers that he was in custody and was about to be interrogated.

These same contentions have previously been presented by defendant and passed upon by this court in habeas corpus proceedings at which evidence was introduced and considered. In those proceedings we found:

1. That petitioner is confined in the New Mexico State Penitentiary by virtue of a commitment issued June 8, 1964, following his conviction of murder in the second degree, with a recommendation by the jury for psychiatric treatment and a sentence of imprisonment for a term of not less than three years nor more than the remainder of his natural life.

2. That petitioner bases his request for release from the penitentiary upon his contention that he has been denied due process of law because (1) confessions admitted to evidence in his trial were inadmissible per se because given when he was less than fifteen years of age; (2) that one confession was made in the absence of the juvenile probation officer; (3) in the absence of an attorney; and (4) that the petitioner was insane when said confessions were made.

3. That a petition was filed in the juvenile court of Bernalillo County, New Mexico, charging petitioner, then fourteen years of age, with murder.

4. That thereafter, an order of the juvenile court was entered transferring petitioner to the district court to be treated as an adult.

5. That petitioner was bound over to the district court after a preliminary examination.

6. That a plea of not guilty and not guilty by reason of insanity was entered when petitioner was arraigned in the district court.

7. That petitioner was represented by employed counsel at the hearing in the juvenile court, the preliminary examination, and at all stages of the case in the district court.

8. That police officers of the juvenile division of the Albuquerque police force took petitioner into custody at approximately 11:00 p. m., January 26, 1961 and took him to police headquarters for questioning where interrogation was commenced at approximately 11:30 p. m., January 26, 1961 and completed and signed at 12:25 a. m., January 27, 1961.

9. That petitioner was immediately thereafter taken to the juvenile detention home.

10. That petitioner's parents followed him in their own car to the police station and were in an adjoining room while petitioner was being questioned.

11. That petitioner was advised that he need not give a statement, that he was entitled to an attorney, that any statement might be used against him, that if he was found guilty, he would have to serve a long period of time in the penitentiary, and that this was a very serious matter. He did not ask for either an attorney or his parents.

12. That the juvenile officers were notified of petitioner's detention on the morning of January 27, 1961 and at approximately 10:15 a. m. on that day a second written confession was taken at the Bernalillo County juvenile detention home in the presence of the juvenile officer in charge of the detention home.

13. That thereafter the petitioner, in the presence of his attorney and the investigator for the district attorney for the second judicial district, made a verbal confession in which he stated that the facts given by him in the two former confessions were true.

14. That the written confessions were admitted into evidence in the murder trial over petitioner's objection and after a determination thereon by the court in the absence of the jury.

15. That the verbal confession was admitted into evidence on the said cause without objection.

16. That petitioner has not asserted that said confessions or any of them were not voluntarily made nor has he challenged the truth of any statement contained therein.

17. That the jury was instructed on the issue of whether the confessions were voluntarily given and on the issue of petitioner's sanity, and on his mental condition as affecting the confessions.

18. That the issue of petitioner's sanity was submitted to the jury and by its verdict the jury determined that petitioner was sane.

19. That no evidence on the issue of petitioner's sanity was offered at this proceeding.

20. That none of the confessions were taken during a period of time when the police officers were making a conscious effort to avoid giving notice to the juvenile probation officer of the petitioner's detention or questioning.

From the foregoing findings we concluded:

1. That a confession by a juvenile is not inadmissible per se.

2. That considering all of the evidence adduced at this proceeding, the confessions admitted in evidence appear to have been free and voluntary.

3. That admission in evidence of petitioner's statements did not violate the due process clauses of the Constitution of the United States nor the State of New Mexico.

The petition was quashed and defendant remanded to the custody of the Warden of the New Mexico State Penitentiary.

■ Thus, the very issues now presented were resolved against defendant in an evidentiary hearing on the merits before this court. We are not convinced that the ends of justice would be served by a reconsideration or redetermination of these issues by the sentencing court or by this court. The purpose of our Rule 93, which was adopted from 28 U.S.C.A. § 2255, has already been served, insofar as defend-

ant's first point is concerned. He is not entitled to a successive determination on the merits of contentions previously held against him in the habeas corpus proceeding. See State v. Campos, 79 N.M. 390, 444 P.2d 368, decided August 19, 1968; State v. Canales, 78 N.M. 429, 432 P.2d 394 (1967).

■ In addition, almost identical contentions were urged upon us in State v. Ortega, 77 N.M. 7, 419 P.2d 219 (1966), and were resolved against the minor defendants in that case. The totality of the circumstances surrounding the giving of the confessions in that case is sufficiently similar to the totality of the circumstances surrounding the giving of the confessions by defendant in the present case, that what we said in that case, in disposing of the contentions, is applicable to a disposition of the like contentions here urged upon us.

■ Insofar as defendant's claim of mental incompetence or insanity at the time of giving of the confessions is concerned, the question of insanity was submitted to the jury and resolved against defendant. There is no claim made that the details of the commission of the murder recited by defendant in his confessions are not correct. A reading of the confessions and of the testimony concerning defendant's mental capacities and his actions after the commission of the crime clearly demonstrates that he had sufficient mental capacity at that time to be conscious of what he was doing, to retain memory of his actions, and to relate with reasonable accuracy the details of his actions. This is all that was required, insofar as his mental state or condition is concerned, to support the voluntariness of the confessions. As stated by Professor Henry Weihofen:

"Incompetency at Time of Confession. *For a defendant to make a valid confession, he must have had sufficient mental capacity at the time to be conscious of the physical acts performed by him, to retain them in his memory, and to state them with reasonable accuracy.* It has been held that when a confession is offered, if defendant offers to prove

that he was not mentally competent to make such confession, this issue should be tried before the confession is admitted. But mere mental instability or temporary lack of faculties only goes to the weight to be given the confession." (Emphasis added). Weihofen, Mental Disorder as a Criminal Defense, 455 (Dennis & Co., New York, 1954).

See also State v. Ortega, supra; McAffee v. United States, 72 App.D.C. 60, 111 F.2d 199 (1940); Elrod v. State, 281 Ala. 331, 202 So.2d 539 (1967); Redwine v. State, 258 Ala. 196, 61 So.2d 724 (1952); State v. Allen, 67 Wash.2d 238, 406 P.2d 950 (1965); Annot., 69 A.L.R.2d 348 (1960).

By his second point he claims his "conviction was based on testimony regarding blood type which was improperly received in evidence."

The contentions are: (1) That the evidence failed to establish the identity of the clothes and the identity of the blood on the clothes; (2) That there was no proper foundation for the admission of the testimony as to the results of the blood test, because there was no proof that "the test used is legally acceptable," that "the particular apparatus is reliable," or that "the test was conducted and the apparatus used in a competent manner by a qualified person"; (3) That no proper chain of custody of the clothing was established; (4) That it was improper to admit testimony as to the clothing and the results of tests made of the blood thereon, without producing the clothing; and (5) That by reason of these claimed deficiencies in the evidence relative to the clothing and the tests made of the blood thereon, this court should apply the doctrine of fundamental error announced in State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967), and State v. Garcia, 19 N.M. 414, 143 P. 1012 (1914).

■ The objections made at trial failed to include some of the grounds now urged upon us. These grounds cannot properly be first urged in this court. Supreme Court Rule 20 (§ 21–2–1(20), N.M.S.A.1953); Batchelor v. Charley, 74 N.M. 717, 398 P.2d

49 (1965); State v. Lott, 73 N.M. 280, 387 P.2d 855 (1963); State v. Knerr, 79 N.M. 133, 440 P.2d 808 (Ct.App.1968); State v. Gray, Ct.App., 444 P.2d 609, decided August 9, 1968.

■ However, some of the grounds now urged upon us were included in the objections made at trial, and some of these possibly should have been sustained. However, any error committed in overruling these objections cannot properly be raised in a postconviction proceeding, under Rule 93, because they do not constitute violations of the Constitution of the United States or the Constitution of New Mexico, and they are not matters which form a basis for a collateral attack upon the judgment of conviction or the sentence. They are evidentiary matters which may be raised only on a direct appeal. State v. Sedillo, 79 N.M. 254, 442 P.2d 212 (Ct.App.1968); McLester v. United States, 306 F.2d 880 (10th Cir. 1962); Caviness v. United States, 226 F.2d 216 (4th Cir. 1955). See also State v. Travis, 79 N.M. 307, 442 P.2d 797 (Ct.App.1968).

■■ Defendant recognizes that any errors the trial court may have committed in admitting the evidence over proper objection are not ordinarily grounds for postconviction relief, but he urges upon us that the errors are so great and so fundamental that substantial justice was denied him, and that we should apply the doctrine of fundamental error announced in State v. Salazar, supra, and State v. Garcia, supra.

Whatever errors may have been committed fail to constitute a basis for finding fundamental error. There is ample evidence to support the conviction, even by disregarding all of the evidence as to the clothing and blood tests, and there is little, if any, evidence of an exculpatory nature. It cannot be seriously suggested that the innocence of defendant appears indisputable, or that the question of his guilt is so doubtful that it would shock the conscience to permit his conviction to stand. Under these circumstances the doctrine of fundamental error cannot properly be invoked

and applied. State v. Salazar, supra; State v. Sanders, 54 N.M. 369, 225 P.2d 150 (1950); State v. Garcia, supra; State v. Travis, supra; State v. Reynolds, 79 N.M. 195, 441 P.2d 235 (Ct.App.1968); State v. Torres, 78 N.M. 597, 435 P.2d 216 (Ct.App. 1967).

■ The defendant's third point is that "the district court did not fairly or adequately entertain the defendant's motion to vacate judgment and sentence." The argument is that by reason of the matters urged in his first two points, which are discussed above, the trial court should have appointed counsel for defendant, should have conducted an evidentiary hearing on his contentions, and should have made detailed findings on these contentions.

Defendant relies upon the case of State v. Franklin, 78 N.M. 127, 428 P.2d 982 (1967). Nothing stated in the Franklin case compels actions by the trial court now urged upon us. In that case the trial court, in making his findings of fact and conclusions of law, admittedly did not inspect the motion, files and records of the case, but relied solely upon representations made by counsel. Such is not the case here.

In any event, we have reviewed the record before us touching upon the contentions urged under Points 1 and 2, and, as above shown, have resolved them against defendant. Since defendant's contentions are shown by the files and records to be completely groundless, it was not error for the trial court to deny the motion, to refuse to conduct a hearing thereon, and to fail to appoint counsel. State v. Lobb, 78 N.M. 735, 437 P.2d 1004 (1968); State v. Decker, 79 N.M. 41, 439 P.2d 559 (Ct.App.1968); State v. Sanchez, 78 N.M. 25, 420 P.2d 786 (Ct.App.1966).

Defendant's final two points are that: "The State has the burden to show that procedural safeguards are provided at custodial interrogation by transcription," and that: "The information was ineffective to charge the defendant with a crime, because it was predicated on the illegally obtained confessions."

No authority is cited for his positions under these points.

 His first position under these points apparently is that the State may not use a confession without a written record being made of the "actual advice given by the interrogating officer to the defendant of his rights to counsel and to remain silent." The test of voluntariness of confessions is not dependent upon a verbatim transcription of the advice or warnings given to a defendant. Here there is testimony by the officers that the advice or warnings were given.

 The adequacy of the Information is not dependent upon the evidence which the State may subsequently adduce in support of the charge or charges therein contained.

We find no merit to either of defendant's final contentions.

The order denying the motion should be affirmed.

It is so ordered.

MOISE, COMPTON and CARMODY, JJ., concur.

NOBLE, Justice (concurring specially in the result).

The petitioner, convicted of murder, has attacked the judgment and sentence by a Rule 93 motion, asserting that confessions unconstitutionally obtained during custodial interrogation were improperly admitted in evidence. This is, of course, a collateral attack upon a criminal conviction because of the asserted error in the admission of evidence. Whether a collateral attack is permissible in a Rule 93 proceeding depends upon the nature of the constitutional claim and the effectiveness of direct remedies. Thornton v. United States, 125 U.S.App. D.C. 114, 368 F.2d 822 (1966).

Our Rule 93 was copied from 28 U.S.C.A. § 2255 and, therefore, the interpretation placed on the federal statute by the federal courts is persuasive of the rights cognizable under our identical rule. State v. Weddle, 77 N.M. 420, 423 P.2d 611; Lopez v. Singh, 53 N.M. 245, 205 P.2d 492. Matters which could have been raised upon direct appeal furnish no basis for the post-conviction motion. Gallarelli v. United States, 260 F.2d 259 (1st Cir. 1958); McCreary v. United States, 249 F.2d 433 (5th Cir. 1957). The motion may not be used in lieu of an appeal to correct errors committed in the course of a trial even though such errors relate to constitutional rights. Barkan v. United States, 362 F.2d 158 (7th Cir. 1966); Nash v. United States, 342 F.2d 366 (5th Cir. 1965); United States v. Marchese, 341 F.2d 782 (9th Cir. 1965); United States v. Trumblay, 234 F.2d 273 (7th Cir. 1956).

The leading case on availability of § 2255 to correct a claimed erroneous admission of an involuntary confession is that of Smith v. United States, 88 U.S.App.D.C. 80, 187 F.2d 192 (1950), where Judge Fahy said that the admission alone of evidence claimed to infringe a right protected by the Constitution does not result in the denial of a constitutional guaranty so long as the error is subject to correction by appeal and there is no indication of any deterrent to appeal. See also Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455. These decisions thus held that in the circumstances presented by the post-conviction motion in the instant case, the attack must be direct, not collateral, otherwise the post-conviction remedy would become a substitute for appeal.

It is true that Smith was prior to Escobedo, but it has consistently been followed by an unbroken line of federal circuit decisions to and including De Welles v. United States, 372 F.2d 67 (7th Cir. 1967). Thornton v. United States, supra, fully reviewed the question in the light of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933, where the Smith reasoning was reaffirmed. As late as De Welles v. United States, supra, the court agreed with and reaffirmed the following from Thornton:

"[W]here effective procedures are available in the direct proceeding [to correct trial errors, even as to constitutional

608

claims], there is no imperative to provide an additional, collateral review, leaving no stone unturned, when exploration of all avenues of justice at the behest of individual petitioners may impair judicial administration of the federal courts, as by making criminal litigation interminable, and diverting resources of the federal judiciary."

If we are required to permit collateral review, where effective procedures are available for a direct attack, paraphrasing Thornton, we permit interminable proceedings in the lower courts and, consequently, appeals to appellate courts which may impair judicial administration of our courts. I, therefore, concur with the majority that the order appealed from denying the postconviction relief sought should be affirmed, but I do so upon the ground that the collateral attack by this proceeding is improper.