1998-NMSC-010

957 P.2d 1145

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**JASON F., a child, Defendant–Petitioner.**

No. 23753.

Supreme Court of New Mexico.

April 8, 1998.

Phyllis H. Subin, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Petitioner.

Tom Udall, Attorney General, Max Shepherd, Assistant Attorney General, Santa Fe, for Respondent.

## OPINION

SERNA, Justice.

{1}  Jason F., a child, appeals a finding of delinquency.  During police questioning, Jason confessed to burglarizing two restaurants and a bowling facility.  An adjudicatory hear-

ing was held before a special master. The special master found that Jason committed three counts of burglary and one count of criminal damage to property. The children's court adopted the special master's findings and ordered Jason (1) to be placed on juvenile probation for a maximum of two years, (2) to be referred to a non-residential community corrections facility, and (3) to pay restitution in the amount of $1,000. In a Memorandum Opinion, the Court of Appeals affirmed the children's court. *See State v. Jason F.*, NMCA 16,329, slip op. (June 18, 1996). This Court granted certiorari on the following issues: whether the children's court erred in appointing a special master to preside over an adjudicatory hearing; whether the children's court erred in refusing to rule on the child's motion to suppress his confession; and whether the children's court abused its discretion by finding the child was competent when he committed the offenses and competent when he confessed.

**BACKGROUND**

{2} On January 16, 1994, two Sonic restaurants in Hobbs, New Mexico were burglarized, and a small sum of money was taken from each store. On February 1, 1994, the Bowlarama in Hobbs was burglarized. A small sum of money and liquor were taken from the Bowlarama, and the interior was vandalized.

{3} On February 12, 1994, Jason, age 17, was arrested for the commission of the burglaries. Jason claims he ingested eight doses of LSD the day before his arrest. After a Hobbs police officer warned him of his *Miranda* rights, Jason confessed to the crimes, and the confession was recorded on tape. The detective did not ask Jason if he wished to have a parent or attorney present, nor did Jason sign a waiver of his rights.

{4} The children's court appointed a special master to preside over a March 18, 1994, adjudicatory hearing on the matter. At the adjudicatory hearing, Jason admitted he committed the crimes. Jason changed counsel in April 1994. Jason's new counsel brought a motion to permit withdrawal of Jason's admission to the children's court, or in the alternative, to order an examination of Jason's mental and physical health. The children's court ordered that Jason be evaluated by the New Mexico State Hospital for the purpose of determining Jason's sanity and competency at the time of the alleged offenses, at the time of the alleged confession, and at the time of his admission to the children's court on March 18, 1994.

{5} The children's court held a competency hearing on November 14, 1994. The children's court found Jason was competent at the time the offenses were committed, at the time he confessed to the detective, and at the time he gave his admission to the children's court on March 18, 1994. The children's court found Jason competent and ordered him to stand trial; however, Jason was allowed to withdraw his admission of guilt.

{6} The children's court then referred the case back to the special master for an adjudicatory hearing. Jason's counsel filed a motion objecting to the appointment of the special master, and counsel moved to suppress Jason's February 1994 confession. The children's court denied both motions. After an adjudicatory hearing held on January 27, 1995, the special master found Jason delinquent. Although Jason objected to the use of a special master, the children's court adopted the findings of the special master. The Court of Appeals rejected Jason's contentions on appeal, holding that Jason did not properly preserve for appeal his objections to the appointment of a special master, affirming the children's court's findings of competency, and affirming the children's court's denial of Jason's motion to suppress his confession. *See State v. Jason F.*, NMCA 16,329 slip op. (June 18, 1996).

**ISSUE I—APPOINTMENT OF A SPECIAL MASTER**

{7} Jason contends that the children's court erred in appointing a special master to preside over the January 27, 1995, adjudicatory hearing. The State responds that Jason waived his objection to the appointment of a special master because Jason's counsel failed to argue to the children's court that the criteria of Rule 10–111(A) NMRA 1995 (prior to Sept. 1, 1995 amendment) were met. Rule 10–111(A) has since been amended, but at the time of these proceedings Rule 10–111(A)

provided that a special master may be appointed to assist a children's court judge "upon the showing that: 1) the children's court judge is unable to expeditiously dispose of pending children's court cases; or 2) some exceptional condition requires the appointment of a special master."[1]

{8}  Jason's counsel objected generally to the appointment of a special master on constitutional grounds; however, his counsel failed to object on the grounds that the two criteria of Rule 10–111(A) were not met. The children's court appointed the special master without making a finding of dispositional necessity or exceptional condition for a special master. However, we agree with the State that Jason did not preserve this issue for appeal.

{9}  "It is well-settled that objections must be raised below to preserve an issue for appellate review." *State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986). The New Mexico Rules of Appellate Procedure require a ruling or decision by the district court to be "fairly invoked" in order to preserve a question for review. Rule 12–216(A) NMRA 1998. Jason did not invoke a ruling on the application of Rule 10–111(A). Consequently, neither the children's court nor the State had the opportunity to address the criteria of Rule 10–111(A), and no factual record on this issue exists for review.

{10}  Moreover, Jason did not argue at trial, nor did he argue on appeal that this objection involves a fundamental right, general public interest, or fundamental error. *See* Rule 12–216(B) NMRA 1998 (stating that an appellate court may consider "in its discretion, questions involving: (1) general public interest; or (2) fundamental error or fundamental rights of a party."). Therefore, none of the exceptions to the preservation rule outlined in Rule 12–216 are at issue. Jason thus waived his objection that the children's court did not meet the two criteria set forth in the former Rule 10–111(A), and we do not consider this argument on appeal.

{11}  Jason also argues that the special master's refusal to rule on his motion to suppress his confession violated due process and denied him the same basic rights as an adult. *See* NMSA 1978, § 32A–2–14(A) (1993) (providing that "[a] child subject to the provisions of the Delinquency Act ... is entitled to the same basic rights as an adult, except as otherwise provided in the Children's Code ...". We agree with the Court of Appeals that neither due process nor Section 32A–2–14(A) was violated by the failure of the special master to rule on the motion to suppress because the children's court reviewed the matter both before and after the adjudicatory hearing.

{12}  We also agree with the Court of Appeals that the special master in this case was not a judge pro tempore appointed in violation of New Mexico Constitution art. VI, § 15 (as amended 1978). Under Rule 10–111(F) NMRA 1998, the children's court may "adopt the [special master's] report or proposed order, modify it or reject it in whole or in part." Thus, the special master's report to the children's court was only a recommendation, and the children's court retained the final decision-making authority.

## ISSUE II—DENIAL OF MOTION TO EXCLUDE CHILD'S CONFESSION

{13}  Jason argues that the children's court erred in determining Jason was competent to confess and that the children's court erred in refusing to suppress his confession. Jason argues that his motion to suppress his confession should have been granted because (1) the children's court denied his motion as untimely, and untimeliness should not have been a basis to deny the motion; (2) the State failed to timely disclose Jason's tape-recorded confession; and (3) the children's court did not make the State carry its burden of proving the voluntariness of Jason's confession. We agree with Jason that the children's court did not make the State carry its burden of proving the voluntariness of Jason's confession. We recognize

---

1.  Rule 10–111 NMRA 1998 no longer requires a showing of exceptional circumstances or dispositional necessity for an appointment of a special master to preside at an adjudicatory hearing.

Rule 10–111(C) currently provides that a special master may not preside at an adjudicatory hearing without concurrence of the parties.

that competence is an element to consider in determining whether a confession is voluntary; however, the issue of whether Jason was competent to give a confession is a separate inquiry from whether Jason voluntarily confessed. The children's court made no determination as to whether Jason knowingly, intelligently, and voluntarily waived his constitutional rights. Therefore, we reverse and remand this issue to the children's court so that it can make a proper ruling.

■ {14} On January 24, 1995, Jason filed with the children's court a motion to suppress his confession at his upcoming adjudicatory hearing before the special master. The rule in effect at the time, Rule 10–114(B) NMRA 1995 (prior to Sept. 1, 1995 amendment), required counsel to file all pre-adjudicatory motions within twenty days of counsel's entry of appearance. Because Jason's counsel entered her appearance on April 25, 1994, and the motion to suppress was filed several months thereafter, the children's court judge denied the motion to suppress as untimely. The special master also refused to hear counsel's argument on the merits of Jason's motion to suppress. Jason argues that the children's court's denial of his motion to suppress should not have precluded him from arguing the merits of the motion before the special master. *See State v. Doe,* 93 N.M. 143, 145, 597 P.2d 1183, 1185 (Ct. App.1979) (holding that child's failure to file a pre-adjudicatory motion to suppress evidence did not deny child the right to object to the admission of evidence at trial). However, we agree with the Court of Appeals that Jason did have the opportunity to argue the merits of his motion to suppress in a competency hearing before the children's court, in his motion to reconsider the competency ruling, and in his objections to the special master's report.

■ {15} We also reject Jason's argument that the children's court should have suppressed the confession because the State failed to timely disclose to Jason the tape of his confession. Jason did not show that he was prejudiced by not having a copy of the taped confession prior to the adjudicatory hearing. The two experts who testified at the competency hearing indicated that the

taped confession might have affected their opinions of Jason's competency. However, Jason never asked that the experts listen to the tape, and when the children's court denied the State's request to play the tape for Dr. Westbrook, Jason made no objection. Moreover, Jason had a copy of the transcript of the confession two months prior to the adjudicatory hearing before the special master. Jason was informed by an employee of the children's court that the court could not copy the tape since the court was unable to copy micro-cassettes. Jason's attorney apparently took no further steps to listen to the tape or make arrangements for it to be copied. Counsel's efforts to obtain a copy of the tape may have been frustrated by the court's inability to copy a micro cassette; however, the children's court clearly stated on the record that the court had never denied her access to the tape, nor had Jason's counsel requested that she be allowed to listen to the tape. Thus, we reject Jason's argument that his confession should have been suppressed because the tape of his confession was not disclosed to him prior to the hearing.

{16} However, our review of the record indicates there was no ruling by the children's court on the issue of whether Jason knowingly, intelligently, and voluntarily waived his constitutional rights prior to giving his confession to the children's court. At Jason's competency hearing and in his motion to suppress, Jason's counsel argued not only the issue of whether Jason was competent to give his confession, but also the issue of whether Jason gave a voluntary confession. While the motion to suppress was considered by the children's court to be untimely, the children's court was alerted at the competency hearing to Jason's objection to the admission of the confession on the grounds that he did not knowingly, intelligently, and voluntarily waive his rights. Jason's counsel specifically informed the children's court of NMSA 1978, § 32A–2–14(E) (1993), the statutory standard to be applied when determining whether a child's constitutional rights have been knowingly and voluntarily waived. The children's court made no ruling on this issue.

{17} The question of a defendant's competency is separate from the question of a defendant's ability to knowingly and voluntarily waive constitutional rights. It is the defendant's burden to prove that he or she is incompetent. *See State v. Chapman,* 104 N.M. 324, 327–28, 721 P.2d 392, 395–96 (1986) (holding that defendant has burden of proving by a preponderance of the evidence that he or she is not competent to stand trial); *State v. Lujan,* 87 N.M. 400, 402, 534 P.2d 1112, 1114, *cert. denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 400 (1975) (holding that a confession is presumed to be given by a competent person so that "burden is on the defendant to show some evidence to the contrary"). On the other hand, "it is the burden of the prosecution to prove by a preponderance of the evidence that a defendant's statement was given voluntarily." *State v. Setser,* 1997–NMSC–004, ¶ 8, 122 N.M. 794, 932 P.2d 484 (citing *Aguilar v. State,* 106 N.M. 798, 800, 751 P.2d 178, 180 (1988)).

{18} In addition to the differing imposition of burdens on the opposing parties, the test used to determine whether a defendant is competent is different from the test used to determine whether a defendant voluntarily waived his or her rights. The test used to determine mental competency to make a confession is whether a defendant " 'had sufficient mental capacity at the time to be conscious of what he [or she] was doing, to retain memory of his [or her] actions, and to relate with reasonable accuracy the details of his [or her] actions.' " *State v. Lujan,* 87 N.M. at 401, 534 P.2d at 1113 (quoting *State v. Sisneros,* 79 N.M. 600, 605, 446 P.2d 875, 880 (1968)). In contrast, to determine whether a child knowingly, intelligently, and voluntarily waived his or her constitutional rights, courts consider the following factors:

(1) the age and education of the respondent; (2) whether or not the respondent is in custody; (3) the manner in which the respondent was advised of his [or her] rights; (4) the length of questioning and circumstances under which the respondent was questioned; (5) the condition of the quarters where the respondent was being kept at the time he [or she] was questioned; (6) the time of day and the treatment of the respondent at the time he [or she] was questioned; (7) the mental and physical condition of the respondent at the time that he [or she] was questioned; and (8) whether or not the respondent had the counsel of an attorney, friends or relatives at the time of being questioned.

NMSA 1978, § 32A–2–14(E); *see Setser,* 1997–NMSC–004, ¶¶ 13–14, 122 N.M. 794, 932 P.2d 484 (affirming the trial court's determination that child's confession was given voluntarily under either Section 32A–2–14(E) or the totality-of-circumstance standard). This list of factors is essentially a codification of the totality-of-circumstance test used to determine whether an adult defendant gave a knowing and voluntary confession. *Setser,* 1997–NMSC–004, ¶ 13, 122 N.M. 794, 932 P.2d 484.

{19} Thus, the analysis for competency and the analysis for voluntary waiver of rights are distinct and separate inquiries, with each party bearing a separate burden. The totality-of-circumstance test used to determine whether a confession was knowing and voluntary incorporates the principle of competency because one of the factors to consider under the test is the mental condition of the defendant at the time the confession is made. This Court recognized "that under the totality of the circumstances test, a confession is not involuntary solely because of a defendant's mental state. Instead, the totality of circumstances test includes an element of police overreaching." *State v. Fekete,* 120 N.M. 290, 299, 901 P.2d 708, 717 (1995). Therefore, rather than being "a threshold requirement, a defendant's mental state at the time he or she makes incriminating statements to the police is only one factor for the trial court to consider when determining whether such statements were voluntary." *Id.*

{20} In this case, the children's court made no findings on the issue of whether Jason knowingly and voluntarily waived his rights—the children's court made a determination only as to Jason's mental competency to give the confession. Thus, the children's court did not require the State to carry its burden in proving by the preponderance of the evidence that the confession was volun-

tary. For this reason, we reverse Jason's delinquency determination, and we remand the case to the children's court to make the necessary determination of whether Jason knowingly and voluntarily waived his rights.

## ISSUE III—COMPETENCY DETERMINATIONS

### Competency at Time of Offenses

{21} Jason argues that the Court of Appeals erred in affirming the children's court's ruling that he was competent at the time the alleged offenses were committed. We agree with the Court of Appeals that Jason does not explain how he was prejudiced by the finding of competency at the time of the offenses. The finding of competency at the time of the alleged offenses was contained in an order which set the matter for trial, and thus was not a ruling with respect to Jason's guilt or innocence. Further, Jason never gave notice to the trial court or to the special master that he was planning to assert an insanity defense, as is required by Rule 10–220(A) NMRA 1998, nor did Jason give notice that he was planning to assert that he lacked the capacity to form specific intent to commit the offenses, as is required by Rule 10–220(E). We affirm the Court of Appeals holding that the children's court's finding of Jason's competence at the time of the alleged offenses does not constitute grounds for reversal.

### Competency at Time of the Confession

{22} Jason argues that the Court of Appeals erred in affirming the children's court's finding that Jason was competent to give his confession to the police. If on remand the children's court finds that Jason did not knowingly, intelligently, and voluntarily waive his rights, the following discussion on Jason's competency to confess would be moot because Jason's confession would be suppressed. If on remand the children's court finds Jason did knowingly, intelligently, and voluntarily waive his rights, the issue of Jason's competency to confess would still be relevant. In the interests of judicial efficiency and economy, we address the issue of whether Jason was competent to confess. While the following discussion of Jason's competency assumes that Jason knowingly,

intelligently, and voluntarily waived his rights (so that the confession is not excluded on voluntariness grounds), we caution that we are *not* making a determination that Jason did in fact voluntarily waive his rights.

{23} We review the children's court's determination of competency for an abuse of discretion. *See State v. Lopez,* 91 N.M. 779, 581 P.2d 872 (1978); *State v. Najar,* 104 N.M. 540, 542, 724 P.2d 249, 251 (Ct.App.1986). Jason bears the burden of establishing, by a preponderance of the evidence, that he was incompetent. *See Chapman,* 104 N.M. at 327–28, 721 P.2d at 395–96; *Lujan,* 87 N.M. at 402, 534 P.2d at 1114. We note again that the test used to determine mental competency to make a confession is whether a defendant " 'had sufficient mental capacity at the time to be conscious of what he [or she] was doing, to retain memory of his [or her] actions, and to relate with reasonable accuracy the details of his [or her] actions.' " *Lujan,* 87 N.M. at 401, 534 P.2d at 1113 (quoting *Sisneros,* 79 N.M. at 605, 446 P.2d at 880).

{24} At the competency hearing before the children's court, Jason presented the testimony of his mother and two mental health experts. Jason's mother testified at the competency hearing that Jason appeared to be in no condition to answer police questions the night before he gave his confession because he was jittery, paranoid, and scared. Jason gave his confession to Detective Emerson of the Hobbs Police Department on the afternoon of February 12, 1994. Jason was admitted to a hospital on Sunday, February 13, 1994, because he had gone into convulsions and he had slit his wrists in a suicide attempt.

{25} A psychiatrist, Dr. Mizell, and a psychologist, Dr. Westbrook, both testified at the competency hearing that Jason was impaired and incompetent at the time he confessed to Detective Emerson. Dr. Mizell, chosen by the New Mexico Children, Youth and Families Department to perform the competency evaluation, testified that Jason was probably not competent at the time the offenses were committed, at the time he confessed to Detective Emerson, and at the time

he made his admission in court. Dr. Mizell testified that he based his opinion on Jason's self-reported drug use, his suicide attempt, and the hospital's diagnosis that Jason had been hallucinating and experiencing convulsions. Dr. Mizell's opinion was that Jason was suffering from depression and brain damage which affected Jason's recall and clarity about the facts of the alleged crimes.

{26} Dr. Westbrook, a psychologist who also had treated and examined Jason approximately one month after he was arrested, testified that she, too, was of the opinion that Jason was not competent to give a confession to Detective Emerson on February 12, 1994. [BIC 9]. Dr. Westbrook based her opinion on similar factors as Dr. Mizell, and she also was of the opinion that Jason was suffering from depression and organic brain damage. However, Dr. Westbrook did not testify, as did Dr. Mizell, that Jason had the propensity to confess to acts he did not do. Dr. Westbrook did testify that if Jason was as impaired, on the date he confessed to Detective Emerson, as he was when she saw him in March 1994, Jason would have been confused, distracted, and unable to respond to questioning in a coherent way. Neither Dr. Mizell nor Dr. Westbrook had listened to the taped confession, but both experts suggested that listening to the taped confession could affect their opinions.

{27} However, the State strongly asserts, and both the children's court and Court of Appeals agreed, that the taped confession, along with the lay testimony of Detective Emerson, contradicts the opinions of the two experts. The State introduced the taped confession at the competency hearing, and the State elicited testimony from Detective Emerson regarding his perceptions of Jason at the time he was taking the taped statement. Detective Emerson testified at the competency hearing that Jason did not appear to be intoxicated at the time he took Jason's statement. Detective Emerson informed Jason of his *Miranda* rights and then began the interview. According to Detective Emerson's testimony, Jason did not have difficulty communicating during the interview, and Jason seemed to understand the nature of the accusations against him. Jason ap-

peared to have remembered details of the three burglaries without being directed to an answer by Detective Emerson. For example, Jason recalled that he and his friends entered a Sonic restaurant through a vent above the stove or oven; he recalled the first and last names of the three other individuals with him the night of the Bowlerama break-in; and he recalled that "somebody got into a machine [at the Bowlerama] and got a whole bunch of quarters out."

{28} The children's court judge stated on the record that he had listened to the taped confession, and that Jason appeared to be "coming across very well," and "very responsive to questions." We agree with the Court of Appeals that after listening to the tape, one "could rationally infer that [Jason] was not incoherent or unable to respond intelligently to questioning." *State v. Jason F.*, NMCA 16, 329, slip op. (June 18, 1996). Jason's direct and detailed answers to Detective Emerson's questions indicates that Jason may have had "sufficient mental capacity" to be aware of what he was doing, and he appears to have "retained a memory" of the events at the two Sonic restaurants and the Bowlerama, and to "relate with reasonable accuracy the details of his actions." *See Lujan*, 87 N.M. at 401, 534 P.2d at 1113 (setting forth the test for determining competency).

{29} Moreover, it was within the children's court's discretion to reject the expert testimony in light of Detective Emerson's testimony of his personal observations of Jason at the time of the confession, and in light of the taped confession itself. Even though both experts were of the opinion that Jason was incompetent to make the confession, both experts relied on Jason's self-reported claim of drug intoxication and both experts suggested that listening to the taped confession may have affected their opinion. While the expert opinion in this case may have been compelling, "[e]xpert testimony is opinion, not fact." *State v. Orosco*, 113 N.M. 789, 798, 833 P.2d 1155, 1164 (Ct.App.1991), *aff'd* 113 N.M. 780, 833 P.2d 1146 (1992). Thus, the children's court, the fact-finder in this case, was not required to credit the expert testimonies of Dr. Mizell and Dr.

Westbrook. *See e.g., State v. James,* 85 N.M. 230, 232, 511 P.2d 556, 558 (Ct.App. 1973) (holding that a jury, in determining whether a defendant is not guilty by reason of insanity, "is not required to accept expert opinion and to reject contradictory non-expert opinion"); *Orosco,* 113 N.M. at 799, 833 P.2d at 1165 (holding that trial court did not abuse its discretion in disregarding expert opinion and relying on court's own inquiry to find a young victim competent to testify). We cannot say that the children's court abused its discretion in finding Jason competent to give his confession. We affirm.

**CONCLUSION**

{30} Based on the foregoing, we affirm the Court of Appeals' holding that the use of a special master was appropriate in this case, and that Jason failed to preserve his objection to the use of a special master based on former Rule 10–111(A). However, we reverse and remand this case to the children's court so that it may determine, based on the record before the court, whether the State carried its burden of proving that Jason voluntarily confessed. We affirm the Court of Appeals' holding that the children's court did not abuse its discretion in finding Jason competent to confess.

{31} **IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA, MINZNER and McKINNON, JJ., concur.

1998-NMCA-060