This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37275**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**GILBERT TAFOYA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Gregory B. Dawkins, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Gilbert Tafoya appeals the district court's order ruling that he is not amenable to treatment or rehabilitation as a juvenile. Defendant contends that the district court abused its discretion in so ruling. Further, Defendant contends that the applicable statute, NMSA 1978, Section 32A-2-20 (2009) of the Delinquency Act, NMSA 1978, §§ 32A-2-1 to -33 (1993, as amended through 2019), is unconstitutional as a denial of equal protection. Unpersuaded, we affirm.

## BACKGROUND

**{2}** Defendant was fifteen years old on July 19, 2014, when he and two of his friends carried out an unprovoked, hour-long attack in the middle of the night on three homeless men sleeping on mattresses in a field near Defendant's house. Using their fists, knees, and feet, cinder blocks, a metal pole, a table leg, branches, stones, and knives, the teenagers beat and stabbed two of the men to death. The third man, though injured, managed to run away. Defendant testified that he was too drunk or lazy to chase after him.

**{3}** An investigation into the crimes revealed that the three teenagers had gone to a party the night of the incident, where Defendant smoked pot, ate psilocybin mushrooms, and got very drunk. They left the party and went to Defendant's house. There, at Defendant's suggestion, they decided to rob the homeless men. They put shirts over their faces, went to the field, and—"laughing and having fun"—took turns beating the victims. Defendant testified specifically that he hit one man on the ground with his fists and then hit him in the face about five times with a cinder block. Later, because the man would not be quiet, he hit him about seven more times with the cinder block. He also hit one man in the face with a rock about the size of a grapefruit. After awhile, the three went back to Defendant's house to get knives so they could stab the victims to make sure they were dead. Upon return, Defendant stabbed one of the men about seven times and, because he was groaning too loudly, kicked him in the groin until he bled. After another attacker poured dirt on one of the victim's faces, Defendant patted the dirt down. The teenagers then left.

**{4}** The State charged Defendant with two counts of first-degree murder and multiple other crimes, the details of which are not relevant to this appeal. A grand jury indicted Defendant on the charges.

**{5}** Before the scheduled trial date, Defendant entered into a plea agreement under which he pled guilty to two counts of second-degree murder, armed robbery, aggravated battery (deadly weapon), tampering with evidence, and conspiracy to commit armed robbery. In return, the State dismissed the remaining counts of the indictment and Defendant agreed to testify truthfully at any pretrial interviews and at his codefendants' trials. The plea agreement recognized that because Defendant was no longer charged with first-degree murder, he was entitled to an amenability hearing under Section 32A-2-20; accordingly, if found amenable to treatment or rehabilitation as a juvenile, he would be subject to a maximum penalty of commitment to the custody of the Children, Youth and Families Department (CYFD) until age twenty-one. If not, he would receive an adult sentence. The plea agreement further provided that, should he be sentenced as an adult, he would be ordered to serve twenty years in prison.

**{6}** Before the amenability hearing, the Juvenile Probation and Parole Office (JPPO) of CYFD prepared a court-ordered predisposition report on Defendant's amenability to treatment. Simon Manzanares, a juvenile probation officer who had met weekly with Defendant for three years, wrote the report in consultation with four other CYFD

personnel. The JPPO report took into account two other reports addressing Defendant's amenability: one by Dr. Maxann Shwartz, a neuropsychologist and defense witness, and the other by Dr. Dusty Humes, a psychologist and witness for the State. The JPPO and Dr. Humes both reported that Defendant was not amenable to treatment or rehabilitation as a juvenile. Meanwhile, Dr. Shwartz concluded that Defendant was amenable to treatment, but did not express an opinion on whether Defendant could be rehabilitated before he turned twenty-one.

**{7}** The three reports, along with other exhibits, were entered into evidence at Defendant's five-day amenability hearing. Among other arguments made at the hearing, defense counsel attempted to discredit Dr. Humes's testimony by arguing that she was prejudiced toward an outcome of non-amenability, based on evidence of Dr. Humes's commentary about the murders posted on her blog and statements made during a television news interview shortly after the incident.

**{8}** Following the hearing, the district court issued a thirty-three-page order concluding that Defendant was not amenable to treatment or rehabilitation as a juvenile. The order outlined the district court's analysis under the controlling statute, Section 32A-2-20. Subsection (C) of the statute sets forth seven factors for determining whether a youthful offender, like Defendant, is amenable to treatment or rehabilitation as a juvenile and should receive juvenile sanctions—or is not amenable and should be sentenced as an adult. *See* § 32A-2-20(A)-(C). Among other points it made in the order, the district court expressed concern that Defendant—who was nineteen at the time of the hearing and, if given juvenile sanctions, would be released into the community when he turned twenty-one—"pose[d] a continuing threat to the safety of the public"; it also expressed uncertainty about how Defendant "would act outside a controlled environment without supervision." The district court ultimately concluded that Defendant was not amenable to treatment or rehabilitation as a juvenile in available facilities and would therefore be sentenced as an adult.

## DISCUSSION

**{9}** Defendant challenges the district court's amenability determination, including the admission of certain evidence supporting it, and the constitutionality of the statute underlying that determination. We address each in turn.

### I. The District Court Did Not Abuse Its Discretion by Ruling That Defendant Was Not Amenable to Rehabilitation as a Juvenile

**{10}** We review the district court's amenability determination for an abuse of discretion. *See State v. Nehemiah G.*, 2018-NMCA-034, ¶ 42, 417 P.3d 1175, *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36974, Apr. 26, 2018). "This Court will find an abuse of discretion when the district court's decision is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (alteration, internal quotation marks, and citation omitted).

**{11}** Defendant argues that the district court abused its discretion because it: (1) admitted and adopted the testimony of the State's expert, Dr. Humes; (2) discounted evidence of amenability; and (3) improperly weighed the Section 32A-2-20(C) factors.[1]

## A.      Admission of the State's Expert's Testimony

**{12}** Addressing his first point, Defendant states that Dr. Humes's testimony should have been excluded or rejected because it reflected her bias and, as a product of her "scientifically inadequate" evaluation techniques, was unreliable. Defendant highlights Dr. Humes's blog post and her appearance on television to allege that she approached Defendant's case not with "an open mind" but rather with a prejudice toward finding Defendant not amenable to treatment.

**{13}** Though Defendant does not expressly argue that Dr. Humes's testimony was inadmissible as unreliable evidence under Rule 11-702 NMRA, *see generally Andrews v. U.S. Steel Corp.*, 2011-NMCA-032, ¶ 13, 149 N.M. 461, 250 P.3d 887 (outlining the requirements under Rule 11-702 for admissibility of scientific-knowledge evidence), he does seem to suggest that the district court should not have heard her testimony in the first place. To the extent that this is his contention, we will not consider it, because this argument was not raised below and Defendant fails to overcome that deficiency on appeal.

**{14}** "To properly preserve an issue for appeal, a defendant must fairly invoke a ruling or decision by the trial court." *State v. Gonzales*, 2001-NMCA-025, ¶ 7, 130 N.M. 341, 24 P.3d 776, *overruled on other grounds by State v. Rudy B.*, 2009-NMCA-104, ¶¶ 1, 53, 147 N.M. 45, 216 P.3d 810, *rev'd*, 2010-NMSC-045, ¶ 60, 149 N.M. 22, 243 P.3d 726. This rule applies when, as here, the issue is the admissibility of evidence. *See State v. Foster*, 1999-NMSC-007, ¶ 43, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-007, ¶ 17, 148 N.M. 381, 237 P.3d 683. The rule serves to alert the trial judge to the issue so that the judge has an opportunity to address it. *See Gonzales*, 2001-NMCA-025, ¶ 7. We do not know whether Defendant invoked such a ruling, because he fails to include in his brief "a statement explaining how the issue was preserved in the court below," with corresponding citations. Rule 12-318(A)(4) NMRA. Given this, and because our own review of the record reveals no attempt to exclude Dr. Humes as a witness, we will assume the issue was not preserved. Although unpreserved, this Court could review it for plain error. *See State v. Bregar*, 2017-NMCA-028, ¶ 28, 390 P.3d 212 ("If an appellant fails to object to the

---

[1]Section 32A-2-20(C) provides that, "[i]n making the findings set forth in Subsection B of this section, the judge shall consider the following factors: (1) the seriousness of the alleged offense; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) whether a firearm was used to commit the alleged offense; (4) whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted; (5) the maturity of the child as determined by consideration of the child's home, environmental situation, social and emotional health, pattern of living, brain development, trauma history and disability; (6) the record and previous history of the child; (7) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of procedures, services and facilities currently available; and (8) any other relevant factor, provided that factor is stated on the record."

admission of evidence below, on appeal we will only review for plain error[.]"); *see also* Rule 11-103(E) NMRA. But Defendant fails to explain how the district court's admission of Dr. Humes's testimony constituted plain error. Given these shortcomings, we conclude that there was no error in the district court's admission of Dr. Humes's testimony.

## B.    Evidence of Amenability and Non-Amenability

**{15}**    Nor are we persuaded by Defendant's second contention, that the district court erred in generally adopting Dr. Humes's views over those of Dr. Shwartz. Defendant contends that "there was only one scientifically correct outcome": the one propounded by his expert, Dr. Shwartz. Defendant goes on to summarize portions of the hearing in which Dr. Shwartz questioned Dr. Humes's testing methodologies and diagnosis and maintained that hers were superior. Along these lines, Defendant also points out that the district court discounted or ignored the "many social and emotional health, pattern of living, brain development, and trauma history issues brought forth by [Dr. Shwartz]"— and implies that the district court had no rational basis for so doing. In sum, he asserts that the district court refused to consider Dr. Shwartz's testimony and "improperly weighed the competing opinions[.]"

**{16}**    We are not persuaded because, for one thing, the decision facing the district court was not a binary choice between the experts' opinions, as Defendant's argument suggests—rather, it was a weighing of evidence from multiple witness and non-witness sources. According to the amenability order, the district court gave "the greatest weight" not to Dr. Humes's testimony and report, but to that of Mr. Manzanares, Defendant's probation officer, and to CYFD's conclusions, embodied in the JPPO report. Even if Defendant's attacks on Dr. Humes's testimony were valid, they would do nothing to undermine this and other evidence supporting the validity of the district court's amenability determination.

**{17}**    Furthermore, "[i]t is the fact[-]finder's prerogative to weigh the evidence and to judge the credibility of the witnesses[,]" and "[t]he court [is] free to disregard expert opinion." *State v. Trujillo*, 2009-NMCA-128, ¶ 18, 147 N.M. 334, 222 P.3d 1040 (internal quotation marks and citations omitted). Our appellate courts have repeatedly approved of trial courts' general rejection of experts' amenability determinations in light of other considerations. *See State v. Sosa*, 1997-NMSC-032, ¶ 11, 123 N.M. 564, 943 P.2d 1017 (treating as acceptable the trial court's rejection of two witnesses' testimony and other evidence supporting amenability, where other considerations supported non-amenability); *Trujillo*, 2009-NMCA-128, ¶¶ 14-19; *Gonzales*, 2001-NMCA-025, ¶ 43 ("[I]t is well settled in New Mexico that a fact[-]finder may disregard the opinions of experts." (internal quotation marks and citation omitted)); *see also In Re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 16, 121 N.M. 562, 915 P.2d 318 ("[E]ven if the psychological testimony had been uncontroverted . . ., the children's court judge would still have been within his discretion in sentencing [the c]hild as an adult."). This case is no different.

**{18}** Granted, "the district court is not free to arbitrarily disregard expert testimony" but rather "must have some rational basis for doing so." *Nehemiah G.*, 2018-NMCA-034, ¶ 57. Here—contrary to Defendant's representation that the district court refused to consider Dr. Shwartz's testimony—the amenability order reveals that the district court took much of Dr. Shwartz's report and testimony into account when analyzing amenability under the Section 32A-2-20(C) factors. Insofar as the district court rejected Dr. Shwartz's ultimate conclusion on amenability (which, it seems, is at the heart of Defendant's complaint), the district court articulated a rational basis for its stance. Essentially, it noted that Dr. Shwartz, as the only one of three witnesses who viewed Defendant as amenable to treatment, gave no opinion on how long it would take to reasonably rehabilitate Defendant. From there the district court noted that, if Defendant were found amenable, his participation in treatment would be only voluntary, and he would be released into society within two years. The district court rationally concluded from these facts that it could not be assured that Defendant would be rehabilitated before his release. In other words, it was not an abuse of discretion to discount Dr. Shwartz's conclusion on amenability.

**{19}** Defendant's final argument in this context is also unavailing. Presumably to persuade us that the district court came to the wrong conclusion on the question of amenability, Defendant cites academic literature and portions of *Miller v. Alabama*, 567 U.S. 460 (2012), *Graham v. Florida*, 560 U.S. 48 (2010), *Roper v. Simmons*, 543 U.S. 551 (2005), and *Ira v. Janecka*, 2018-NMSC-027, 419 P.3d 161, discussing juveniles' moral culpability and potential for reform. However, he does not argue that any of these cases, as a matter of law, compels us to reverse the district court's amenability ruling.

**{20}** Our ability to reverse the ruling as a matter of fact, meanwhile, is limited. *See Nehemiah G.*, 2018-NMCA-034, ¶ 65. "Whether [a d]efendant is amenable to treatment or rehabilitation as a child is a determination ultimately left to the discretion of the district court." *State v. Todisco*, 2000-NMCA-064, ¶ 36, 129 N.M. 310, 6 P.3d 1032 (internal quotation marks and citation omitted). That is, we cannot consider "what [we] would have decided based on the testimony presented below," but only "whether any rational fact-finder could have determined [the d]efendant was not amenable to treatment as a juvenile." *Trujillo*, 2009-NMCA-128, ¶ 19 (internal quotation marks and citation omitted). Of note, Defendant does not argue that no rational fact-finder could have made the non-amenability determination as the district court did. Accordingly, we will not consider this argument further.

## C.    Weighing of the Section 32A-2-20(C) Factors

**{21}** Defendant next contends that the district court abused its discretion in three ways when it weighed the Section 32A-2-20(C) factors. The first alleged abuse concerns the district court's analysis in relation to the third factor, "whether a firearm was used to commit the alleged offense[.]" Section 32A-2-20(C)(3). Defendant claims that the district court erred by failing to make a simple "no firearm" finding, and instead enumerated the weapons used in the attack. He argues that this was, effectively, a "double counting" of the second factor: "whether the alleged offense was committed in an aggressive,

violent, premeditated or willful manner[.]" Section 32A-2-20(C)(2). This argument reveals a mistaken view of the district court's role. That role is not to tabulate the factors favoring and disfavoring amenability and then compare totals, but rather to undertake "a prediction of future conduct based on complex considerations of the child, the child's crime, and the child's history and environment." *Gonzales*, 2001-NMCA-025, ¶ 24. In addition to bearing on several of the other crime-related factors, the weapons used in the attack could be properly considered under the last, catchall factor. *See* § 32A-2-20(C)(8). We see no reason the district court was restricted from taking this fact into consideration.

**{22}**     The second claimed abuse is with the district court's analysis in relation to the sixth factor, "the record and previous history of the child[,]" where the district court found that Defendant showed no remorse for his actions. Section 32A-2-20(C)(6). Defendant argues it was improper to take remorse into consideration, because it is neither explicitly a factor nor directly related to the topic of previous history. We disagree. The presence or absence of remorse is relevant to Defendant's character and to the "prediction of future conduct." *Gonzales*, 2001-NMCA-025, ¶ 24. Like with the weapons-related fact, the last, catchall factor provides an avenue for the district court to take remorse into account. *See id.* ¶ 42 (treating lack of remorse as relevant to the amenability determination).

**{23}**     Lastly, Defendant attacks the district court's finding, also made in relation to the sixth factor, that "[t]here is nothing in the record to demonstrate that Defendant experienced a traumatic event or suffered from a disability or prior history of mental health problems before committing the offenses[.]" He argues that the finding is against the weight of the evidence—except the evidence provided by Dr. Humes, who was "utterly discredited" due to her bias. This argument is fruitless, as "[w]e do not reweigh the evidence and will not substitute our judgment for that of the district court[,]" *Nehemiah G.*, 2018-NMCA-034, ¶ 65 (alteration, internal quotation marks, and citation omitted), including when that judgment concerns the credibility of witnesses, *see id.* ¶ 63. All considered, Defendant has articulated no valid reason to disturb the district court's amenability determination.

## II.     We Decline to Consider Defendant's Unpreserved Equal Protection Claim

**{24}**     Defendant next argues that the district court's order finding Defendant not amenable to treatment is erroneous because it resulted from the application of Section 32A-2-20, which he claims is unconstitutional as a denial of equal protection of the laws, a requirement set forth in the Fourteenth Amendment of the United States Constitution and Article II, Section 18 of the New Mexico Constitution. Defendant reasons that, due to his age and mental illness, the statute had a discriminatory effect on him. By this he means that, had he "been a few years younger and with a more treatable disease, the result [of the amenability proceedings] would likely have been different"—in other words, he would have been given juvenile sanctions, not an adult sentence.

**{25}** Again, just as with the issue of admissibility of expert testimony discussed above, Defendant neglects to inform us whether he preserved this issue. It is not obvious from the record that Defendant invoked a ruling on this question,[2] *see* Rule 12-321(A) NMRA; consequently, we assume he did not preserve it. Although we could overlook this omission under the exception to the preservation rule that allows for review of an unpreserved issue if the issue involves the general public interest, fundamental error, or the fundamental rights of a party, *see* Rule 12-321(B)(2); *State v. Franklin*, 2018-NMSC-015, ¶ 10, 413 P.3d 861 (reviewing an unpreserved equal protection claim under the general public interest exception), Defendant does not attempt to show that this issue falls into any of those categories. He thus waived this issue, *see State v. Jason F.*, 1998-NMSC-010, ¶ 10, 125 N.M. 111, 957 P.2d 1145 (deeming a party's objection waived where it was not raised in the children's court and none of the preservation-rule exceptions were argued on appeal), and we will not review it.

## CONCLUSION

**{26}** We affirm.

**{27}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**

---

2We are aware that Defendant did make an equal protection argument to the district court, but it was different from the one he makes on appeal. Specifically, before he entered his plea, when he was still deemed a serious youthful offender for having been charged with first-degree murder—and, thus, denied an amenability hearing and the possibility of juvenile sanctions, *see* §§ 32A-2-3(H) (2009), 32A-2-4(B), and NMSA 1978, § 31-18-15.3 (1993)—Defendant filed a motion for an amenability hearing. He argued that, regarding juveniles charged with first-degree murder, the statutory entitlement to an amenability hearing vested in those under fifteen but not those fifteen or older was an equal protection violation. Defendant later pled, as discussed, to two counts of second-degree murder; he thereby lost his serious youthful offender status and was afforded an amenability hearing. His equal protection claim on appeal, in contrast to the one he made below, pertains to the result of that hearing. It is a different, unpreserved issue.