2007-NMCA-146

171 P.3d 768

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**JOSE S., Defendant–Appellant.**

**No. 24,988.**

Court of Appeals of New Mexico.

Sept. 18, 2007.

Certiorari Granted, No. 30,696,
Nov. 7, 2007.

Gary K. King, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

FRY, Judge.

{1} Child–Defendant Jose S. appeals the trial court's imposition of an adult sentence, alleging that the trial court's procedural and substantive errors in conducting his amenability hearing require reversal. We consider the proper procedures that a trial court must follow in determining a youthful offender's amenability to treatment and, in the event that a youthful offender is determined not to be amenable to treatment, the proper procedures for sentencing the youthful offender to adult sanctions under NMSA 1978, §§ 32A–2–17, –20 (2005). We reverse Child's sentence based on the trial court's failure to follow the statutory procedures.

## BACKGROUND

{2} In order to put the facts of this case in context, we first set out applicable portions of the Delinquency Act in the New Mexico Children's Code. NMSA 1978, §§ 32A–2–1 to –33 (1993, as amended through 2005). New Mexico law categorizes juveniles who commit crimes into three groups. "[S]erious youthful offender[s]"—children fifteen to eighteen years of age who are "charged with and indicted or bound over for trial for first degree murder"—are exempt from the Children's Code and subject only to adult penalties. § 32A–2–3(H) (internal quotation marks omitted). "[Y]outhful offender[s]"—children fourteen to eighteen years of age at the time they commit the offense who are adjudicated as having committed statutorily specified crimes—may be subject to either adult or juvenile sanctions. § 32A–2–3(I) (internal quotation marks omitted). "[D]elinquent offender[s]" are subject only to juvenile sanctions and include all other juvenile offenders. § 32A–2–3(C) (internal quotation marks omitted). In this case, Child was adjudicated a youthful offender.

{3} Once a child is adjudicated a youthful offender, the trial court must determine whether to impose adult or juvenile penalties. This determination is guided by Section 32A–2–20, which outlines the procedure to be followed and the substantive considerations that must be made. It provides in part:

A. The court has the discretion to invoke either an adult sentence or juvenile sanctions on a youthful offender. The children's court attorney shall file a notice of intent to invoke an adult sentence within ten working days of the filing of the petition[.]

B. If the children's court attorney has filed a notice of intent to invoke an adult sentence and the child is adjudicated as a youthful offender, the court shall make the following findings in order to invoke an adult sentence:

(1) the child is not amenable to treatment or rehabilitation as a child in available facilities; and

(2) the child is not eligible for commitment to an institution for children with developmental disabilities or mental disorders.

C. In making the findings set forth in Subsection B of this section, the judge shall consider the following factors:

(1) the seriousness of the alleged offense;

(2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

(3) whether a firearm was used to commit the alleged offense;

(4) whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted;

(5) the sophistication and maturity of the child as determined by consideration of the child's home, environmental situation, emotional attitude and pattern of living;

(6) the record and previous history of the child;

(7) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of procedures, services and facilities currently available; and

(8) any other relevant factor, provided that factor is stated on the record.

§ 32A–2–20(A)–(C).

{4} In June 2003, Child was adjudicated a youthful offender. He was convicted of aggravated battery, aggravated escape or attempt to escape from custody of the Children, Youth and Families Department (CYFD), criminal damage to property, breaking and entering, and kidnapping. Child's convictions were based on Child's beating and handcuffing of a guard at the CYFD facility in which Child was housed at the time, Child's damage to CYFD property, and Child's attempt to escape the facility.

{5} At a single, combined hearing, the trial court first found that Child was not amenable to treatment and then sentenced Child to an adult sentence. Child's position at the amenability hearing was that he was amenable to treatment. Both the expert psychologist hired by Child, Dr. Thompson, and the State's expert psychologist, Dr. Caplan, testified that Child was amenable to treatment and that a specific CYFD treatment facility could provide the services that Child needed for treatment. Despite this expert testimony, the trial court found that Child was "not amenable to treatment or rehabilitation," and that Child was "not eligible for a commitment to an institution." The trial court sentenced Child to a term of twenty-five years and six months, suspending all but twelve years, in the custody of the New Mexico Corrections Department.

{6} Child raises the following arguments on appeal: (1) the finding of non-amenability to treatment should be reversed because of the trial court's failure to follow the procedures mandated by the Delinquency Act, specifically its failure to order reports required by Section 32A–2–17; (2) the sentence imposed by the trial court should be reversed because of the trial court's failure to follow the same procedures, and because Child was denied the opportunity to speak on his own behalf at sentencing; (3) the trial court's finding of non-amenability should be reversed because Child's due process rights were violated when the State used statements and records at the amenability hearing that were not disclosed to Child; and (4) this Court should reverse the trial court's findings on amenability and sentencing because "the entire proceeding was fundamentally flawed." Additionally, Child contends that the judge was prejudiced and requests that we remand to a different judge.

## DISCUSSION

### Procedures for Determining Amenability and Disposition

{7} At the amenability hearing, the trial court heard testimony from both Child's and the State's expert psychologists that Child was amenable to treatment and that the New Mexico Sequoyah Adolescent Treatment Facility (Sequoyah) would be an appropriate facility in which Child could receive such treatment. Dr. Caplan, the expert for the State called as a witness by Child, testified that in order for Child to receive appropriate treatment, Child would need to be placed in a "highly structured environment," and opined that it would take six to twelve months to treat Child in such a highly structured, preferably locked, environment, followed by continuing treatment with gradually decreasing controls, coupled with education and training. Dr. Caplan concluded that Sequoyah would be an appropriate facility for Child.

{8} Dr. Thompson agreed with Dr. Caplan that Child was amenable to treatment. He testified that the three-and-a-half years remaining until Child turned twenty-one years of age would be enough time for Child to receive basic treatment, psychotherapy, and medication, and that Sequoyah would be an appropriate facility for treatment.

{9} After hearing testimony from the psychologists and the victim, among other witnesses, the trial court ruled from the bench that adult sanctions, as opposed to juvenile disposition, was appropriate. The trial court said that "[a] very long-term rehabilitation would be necessary, much longer than would be available in the juvenile system." After making additional oral findings in support of its conclusion that Child was not amenable to treatment, the trial court proceeded to sentence Child to a term of twenty-five years. The trial court did not conduct a separate sentencing hearing.

{10} Child argues that the trial court failed to follow the required procedures outlined in Section 32A-2-17 in two ways. First, Child contends that Section 32A-2-17(A)(3) requires a trial judge to obtain a predisposition report from CYFD regarding Child's amenability to treatment and the trial court's failure to follow this procedure requires reversal. Second, Child argues that, upon finding a youthful offender not to be amenable to treatment, Section 32A-2-17(A)(3)(b) requires a trial court to obtain a predisposition report from the adult corrections department and conduct a sentencing hearing separate from and subsequent to the amenability hearing.

{11} The State argues that the language of the statute regarding the obtaining of reports is discretionary as opposed to mandatory. Alternatively, the State contends that even if the statute requires the trial court to order the predisposition reports, Child did not show that he was prejudiced by the trial court's failure to follow the statute.

{12} We review questions of statutory construction de novo. *State v. Guerra*, 2001–NMCA–031, ¶ 6, 130 N.M. 302, 24 P.3d 334. "Our primary goal in interpreting statutes is to give effect to the Legislature's intent." *Id.* ¶ 7. To determine legislative intent, we first look to the plain meaning of the language of the statute, considering the statute's structure and the individual statute's purpose within the larger statutory framework. *T–N–T Taxi, Ltd. v. N.M. Pub. Regulation Comm'n*, 2006–NMSC–016, ¶ 5, 139 N.M. 550, 135 P.3d 814. "We apply statutes according to their plain meaning, unless adherence to the literal meaning would lead to injustice, absurdity, or internal contradiction." *N.M. Petroleum Marketers Ass'n v. N.M. Envtl. Improvement Bd.*, 2007–NMCA–060, ¶ 11, 141 N.M. 678, 160 P.3d 587. As we explain below, the statute in question is internally inconsistent as to whether the reports are mandatory or discretionary. We therefore interpret this particular statute within the context of the entire statutory scheme to "seek to achieve a harmonious result." *Guerra*, 2001–NMCA–031, ¶ 7, 130 N.M. 302, 24 P.3d 334.

{13} Section 32A–2–17 provides in part:

A. After a petition has been filed and either a finding with respect to the allegations of the petition has been made or a notice of intent to admit the allegations of the petition has been filed, the court *may* direct that a predisposition study and report to the court be made in writing by [CYFD] or an appropriate agency designated by the court concerning the child, the family of the child, the environment of the child and any other matters relevant to the need for treatment or to appropriate disposition of the case. The following predisposition reports *shall* be provided to the parties and the court five days before actual disposition or sentencing:

(1) the adult probation and parole division of the corrections department *shall* prepare a predisposition report for a serious youthful offender;

(2) the department *shall* prepare a predisposition report for a serious youthful offender who is convicted of an offense other than first degree murder;

(3) the department *shall* prepare a predisposition report for a youthful offender concerning the youthful offender's amenability to treatment and if:

(a) the court determines that a juvenile disposition is appropriate, the department *shall* prepare a subsequent predisposition report; or

(b) the court makes the findings necessary to impose an adult sentence pursuant to Section 32A-2-20 . . ., the adult probation and parole division of the corrections department *shall* prepare a subsequent predisposition report; and

(4) the department shall prepare a predisposition report for a delinquent offender, upon the court's request.

§ 32A–2–17(A) (emphasis added). The first sentence of Section 32A–2–17(A) applies broadly to all classifications of children under the Delinquency Act. That sentence is permissive, stating that "the court *may* " order various predisposition reports. This suggests that the trial court has discretion in ordering predisposition reports. Following the discretionary language in the first sen-

tence, however, the second sentence states that "[t]he following predisposition reports *shall* be provided ... five days before actual disposition or sentencing," and then lists the four subsections. This sentence supplies a time frame within which the predisposition reports, if created, are to be provided to the parties and the court. In addition, Subsections (1)-(4) apply more specifically to different cases depending on the classification of the child in question. Section 32A–2–17(A) applies in part to serious youthful offenders, *see* Subsections (A)(1)-(2), youthful offenders, *see* Subsection (A)(3), and delinquent offenders, *see* Subsection (A)(4). Because Child was adjudicated a youthful offender, we are most concerned with the application of Subsection (A)(3).

{14} The first part of the statute, giving the trial court discretion to order predisposition reports and a time frame under which they are to be provided, is inconsistent with the subsections that follow it. The language of Subsections (A)(1)-(3) is mandatory-requiring either CYFD or the adult corrections department to prepare certain reports in specific cases. *See Guerra*, 2001–NMCA–031, ¶ 14, 130 N.M. 302, 24 P.3d 334 ("The word 'shall' as used in a statute is generally construed to be mandatory."). By contrast, the language in Subsection (A)(4) only requires CYFD to prepare a report "upon the court's request."

{15} Thus, the plain language of Section 32A–2–17(A) produces an inconsistent result. Because the statute is unclear as to whether the predisposition reports are discretionary or mandatory, we turn to the broader purpose and policy of the New Mexico Children's Code, and more specifically, the policy of the Delinquency Act. "We read the provisions of a statute together with statutes pertaining to the same subject and seek to achieve a harmonious result." *Guerra*, 2001–NMCA–031, ¶ 7, 130 N.M. 302, 24 P.3d 334 (internal quotation marks and citation omitted).

{16} The juvenile justice system is different from its adult counterpart. It reflects a policy favoring the rehabilitation and treatment of children. The stated purpose of the Delinquency Act within the Children's Code is

to remove from children committing delinquent acts the adult consequences of criminal behavior, but to still hold children committing delinquent acts accountable for their actions to the extent of the child's age, education, mental and physical condition, background and all other relevant factors, and to provide a program of supervision, care and rehabilitation, including rehabilitative restitution by the child to the victims of the child's delinquent act to the extent that the child is reasonably able to do so[.]

§ 32A–2–2(A). In light of this policy, we resolve the inconsistency in Section 32A–2–17(A) in favor of obtaining more information, not less, to guide the trial court in making an educated and appropriate disposition. Our holding that Subsection (A)(3) *requires* CYFD and the corrections department to prepare the reports advances the public policy favoring rehabilitation and treatment over punishment and deterrence in most juvenile cases. Consistent with our holding, Subsection (A)(3) required the trial court to request a report from CYFD on Child's amenability.

{17} We also hold that the trial court, upon making a finding of non-amenability, should have ordered a subsequent predisposition report from the adult department of corrections and then conducted a separate sentencing hearing at a later time under Subsection (A)(3)(b). Because Subsection (A)(3)(b) uses the word "subsequent" to describe the predisposition report from the department of corrections, we conclude that the trial court must order the second report *after* the court makes a determination that a child is not amenable to treatment. We recognize that the statute does not expressly require a separate sentencing hearing for a child who will receive adult penalties. However, the legislature clearly contemplated that the predisposition report by the adult corrections department would be prepared after the finding of non-amenability. This logically leads to the conclusion that there should be a subsequent hearing, prior to which a child could prepare for sentencing.

{18} In light of the policies underlying the Delinquency Act, we recognize the desirability of having a second sentencing hearing if a youthful offender is found to be not amenable to treatment. The child in that event becomes subject to sentencing as an adult, and the adult corrections department can better advise the trial court about what sentence would be appropriate and what treatment options are available within the adult corrections system. Relying solely on an amenability report by the department, as required by Subsection (A)(3)(a), does not seem adequate when a child is subject to adult sanctions.

{19} Having decided that the trial court misinterpreted the statute, we address the appropriate remedy. The Rules of Criminal Procedure for the District Courts apply "in all proceedings in the Children's Court in which a notice of intent has been filed alleging the child is a 'youthful offender', as that term is defined in the Children's Code." Rule 10–101(A)(2)(b) NMRA. Rule 5–113(A) NMRA of the Rules of Criminal Procedure provides that

> error or defect in any ruling, order, act or omission by the court or by any of the parties is not grounds for granting a new trial or for setting aside a verdict, for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take any such action appears to the court inconsistent with substantial justice.

{20} We therefore address whether the trial court's failure to follow the statutory requirements is inconsistent with substantial justice. "In the absence of prejudice, there is no reversible error." *State v. Fernandez,* 117 N.M. 673, 676, 875 P.2d 1104, 1107 (Ct. App.1994); *cf. In re Ernesto M., Jr.,* 1996–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318 (concluding that the child failed to show how the trial court's determination that the child was not amenable to treatment would have been different had trial court weighed statutory factors in a different order).

{21} The State argues that Child cannot demonstrate prejudice from the absence of the reports in question and that this Court must therefore affirm the trial court's sentence. We agree that Child has not demonstrated prejudice. However, Child is thwarted in his attempt to show prejudice because the reports do not exist. Child has no way of demonstrating that the reports would be favorable to him and contrary to the trial court's determination because the reports were never created. This inability to demonstrate prejudice is itself prejudicial to Child.

{22} It thus appears appropriate to remand for new hearings on amenability and disposition with the benefit of the reports from CYFD and the department of corrections. However, we realize that remand for new hearings is complicated by the fact that Child is too old to be sentenced as a juvenile because he is twenty-one. Child acknowledges this fact in his reply brief and asks only that this Court remand for a new sentencing hearing. We therefore remand for a new sentencing hearing after the trial court has requested and obtained the report required by Section 32A–2–17(A)(3)(b).

{23} Because we reverse and remand Child's sentence based on the trial court's error in applying Section 32A–2–17(A), we do not address Child's remaining arguments regarding sentencing. Nor do we address Child's request that the case be remanded to a different trial court judge because of alleged prejudice. The trial court judge who presided over Child's case is no longer on the bench, so this issue is moot. "An appeal is moot when no actual controversy exists, and an appellate ruling will not grant the appellant any actual relief." *State v. Sergio B.,* 2002–NMCA–070, ¶ 9, 132 N.M. 375, 48 P.3d 764. Generally, appellate courts do not decide moot cases. *Gunaji v. Macias,* 2001–NMSC–028, ¶ 9, 130 N.M. 734, 31 P.3d 1008.

## CONCLUSION

{24} For the foregoing reasons, we reverse Child's sentence and remand for a new sentencing hearing according to procedures outlined in this opinion.

{25} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CELIA FOY CASTILLO, Judges.