**Certiorari Granted, No. 32,012, November 18, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-128**

**Filing Date: September 17, 2009**

**Docket No. 28,412**

**STATE OF NEW MEXICO,**

     **Plaintiff-Appellee,**

**v.**

**ELOY TRUJILLO,**

     **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Abigail Aragon, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Silva & Grano Law Firm
Marc A. Grano
Las Vegas, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}** After determining that Defendant Eloy Trujillo, a child offender under the juvenile system, was not amenable to rehabilitation or treatment as a child, the court sentenced him as an adult after he pleaded guilty to second degree murder. Defendant moved for a new amenability and sentencing hearing on the ground that the court should not conduct an

amenability and sentencing hearing at the same time, *see State v. Jose S.*, 2007-NMCA-146, ¶ 17, 142 N.M. 829, 171 P.3d 768, and also moved to recuse the judge because she had previously represented the victim murdered by Defendant. The court denied Defendant's motion for a new amenability hearing and granted his motion for a new sentencing hearing. Defendant was sentenced to seven and one-half years. A hearing was held on Defendant's request to recuse the district judge, and the court denied the motion. Defendant appeals, asserting that the court erred in failing to recuse and that the court's non-amenability determination was not supported by substantial evidence.[1] We affirm.

**BACKGROUND**

**{2}**    At age sixteen, Defendant was charged as a youthful offender in May 2006 with second degree murder and tampering with evidence. *See* NMSA 1978, §§ 32A-2-3(H), -20 (2005) (amended 2009). The charges were based on an incident in which Defendant and his companions agreed to meet with Anthony M. (Victim) for a confrontation near Robertson High School in Las Vegas, New Mexico. During the confrontation, Defendant's cousin, Theodore, and Victim engaged in a fight. The fight ended when Victim released Theodore from a "head lock." At that point, Victim and Defendant exchanged words, then Defendant opened the trunk of his car and retrieved and loaded a shotgun. It is disputed as to when Defendant shot Victim in the chest. The next day at the hospital, Victim died from the gunshot wound inflicted by Defendant.

**{3}**    District Judge Abigail Aragon was assigned to Defendant's case. After his amenability hearing, the court's determination on amenability, and the court's imposition of an adult sentence, Defendant filed a sealed request to recuse Judge Aragon. In the request, defense counsel stated that after the hearing, he discovered from records obtained from the Children, Youth and Families Department (CYFD) that he had received before Defendant's plea, before she was appointed to the bench, Judge Aragon had been appointed as a contract public defender to represent Victim in a juvenile delinquency proceeding. Defendant's motion alleged that Judge Aragon had represented Victim in negotiating a plea to a felony charge against Victim of aggravated assault with a deadly weapon. The motion also alleged that Judge Aragon had "developed a confidential attorney/client relationship" with Victim that made Judge Aragon "privy to extrajudicial background information and personal history information pertaining to [Victim] unavailable to the defense in this case." Citing Rules 5-106(E), 21-200, and 21-400(A)(1) NMRA, Defendant argued that Judge Aragon's prior representation of Victim in a 2003 proceeding created an appearance of impropriety and lack of impartiality that required her to recuse herself from presiding in this case.

**{4}**    At the hearing on this motion, Defendant repeated these claims and defense counsel noted his own neglect in not having reviewed the CYFD records before Defendant entered

---

[1]Defendant did not raise in the district court and does not raise on appeal the issue of whether the State was constitutionally required to present the amenability determinations to a jury. *See State v. Rudy B.*, 2009-NMCA-104, ¶ 23, ___ N.M. ___, 216 P.3d 810 (No. 27,589, July 30, 2009). We therefore do not discuss that issue.

his plea. Judge Aragon noted for the record that she did not personally represent Victim, engage in plea negotiations on his behalf, discuss a plea with him or his parents, or appear before the court on behalf of Victim or his parents, and she stated that she had no direct contact with Victim in the juvenile proceedings. As a result, Judge Aragon denied Defendant's request for recusal. The judge did, however, grant Defendant's request to be allowed to submit the CYFD records on which he based his motion as exhibits for the record.

**{5}** On November 26, 2007, Defendant supplemented the record in this case with those records. The documents included a 2003 order appointing then private attorney Abigail Aragon as the attorney for Victim, in the case styled, *In the Matter of Anthony [M.]*, No. 2003-05-JR. Also included is an affidavit by a private investigator confirming that, upon his review of Victim's case file, the judge's former law partner, Michael Aragon, actually appeared at all the hearings in Victim's case. Defendant also filed a motion to reconsider the order denying the motion to recuse.

**{6}** In his motion to reconsider, Defendant made the same arguments contained in the first motion. Defendant also attached his own affidavit stating that he was unaware of the judge's prior representation of Victim and, upon learning about it, had requested his attorney to seek the judge's recusal. The affidavit was provided to address the court's finding, as perceived by Defendant, that Defendant or his attorney knew of the judge's prior representation of Victim at the time of the amenability and sentencing hearings. The record of the hearing on Defendant's initial motion reveals no such finding by the district court. Rather, Judge Aragon found that Defendant's motion was based only on the unfavorable finding that Defendant was not amenable to treatment as a juvenile.

**{7}** Also in his motion to reconsider, Defendant addressed the court's finding that recusal was unnecessary because Judge Aragon's law partner and not Judge Aragon herself had represented Victim. He argued that the actions of a lawyer are imputed on his or her law partners. The district court did not rule on this second motion and, therefore, it was denied after thirty days by operation of law.

**{8}** Defendant argues on appeal that the district court erred in denying his request for recusal and that substantial evidence did not exist to support an adult sentence.

**DISCUSSION**

**I.      The District Judge Did Not Err in Failing to Recuse Herself**

**A.      Standard of Review and Applicable Legal Standards**

**{9}** We review the denial of a motion to recuse for an abuse of discretion. *State v. Ruiz*, 2007-NMCA-014, ¶ 13, 141 N.M. 53, 150 P.3d 1003 (filed 2006); *State v. Cherryhomes*, 114 N.M. 495, 500, 840 P.2d 1261, 1266 (Ct. App. 1992). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-

3

001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (filed 1998) (internal quotation marks and citation omitted).

**{10}** "In determining whether an objective observer would conclude that a judge's impartiality was questionable, an appellate court should look to see how the judge arrived at the decision not to recuse and then should review the judge's actions for bias." *State v. Riordan*, 2009-NMSC-022, ¶ 11, 146 N.M. 281, 209 P.3d 773. In *Riordan*, the fact that no objective evidence of bias on the part of the court was presented indicated that there was no impropriety for the court to remain on the case. *Id*. ¶ 12.

**{11}** "[R]ecusal is only required when a judge has become so embroiled in the controversy that he [or she] cannot fairly and objectively hear the case." *Id*. ¶ 14 (alteration omitted) (internal quotation marks and citation omitted). "[R]ecusal rests within the discretion of the trial judge, and will only be reversed upon a showing of an abuse of that discretion." *Id*. ¶ 6. "In order to require recusal, bias must be of a personal nature against the party seeking recusal." *Ruiz*, 2007-NMCA-014, ¶ 15 (internal quotation marks and citation omitted). A claim of bias, including a claim of an appearance of bias, cannot be based on mere speculation. *See United Nuclear Corp. v. Gen. Atomic Co.*, 96 N.M. 155, 246-48, n.156, 629 P.2d 231, 322-24, n.156 (1980) (rejecting speculative claims of bias as insufficient to warrant disqualification of a judge under Article VI, Section 18 of the New Mexico Constitution and Rule 21-300 NMRA (formerly Canon 3(C)(1) of the Code of Judicial Conduct)). "Voluntary recusal is reserved for compelling constitutional, statutory, or ethical reasons because a judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *State v. Hernandez*, 115 N.M. 6, 20, 846 P.2d 312, 326 (1993) (alteration omitted) (emphasis omitted) (internal quotation marks and citation omitted); *see also* Rule 21-300(B)(1) ("A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.").

## B.   The Circumstances Did Not Require Recusal

**{12}** We see no basis on which to conclude that Judge Aragon erred in failing to recuse herself. She did not actually represent Victim, and she had no knowledge of his case. Defendant has shown no interest or actual bias of Judge Aragon, nor has he shown prejudice. To the extent that an appearance of impropriety might be considered, nothing Defendant has shown indicates an appearance of impropriety, and Judge Aragon sufficiently dispelled any such appearance. *See Robertson v. State*, 484 S.E.2d 18, 20 (Ga. Ct. App. 1997) (holding that the defendant was not denied a fair trial for failing to recuse where the trial judge's husband represented the victim in a civil suit and the trial judge only had an indirect interest); *Hunter v. State*, 684 So. 2d 625, 629-31 (Miss. 1996) (affirming the court's denial of the defendant's motion to recuse where the judge's firm had previously represented the victim but the case was not discussed with the judge and where the defendant never alleged that he was actually prejudiced and only argued that the trial judge's relation gave an appearance of impartiality); *Flores v. State*, 79 N.M. 47, 48-49, 439 P.2d 565, 566-67 (Ct. App. 1968) (holding that the defendant was not denied a fair and impartial trial where a trial judge represented the defendant in the past).

## II.   The Court's Non-Amenability Finding

**Was Supported by Substantial Evidence**

## A.      Standard of Review

**{13}** We review non-amenability findings for substantial evidence or abuse of discretion. *State v. Gonzales*, 2001-NMCA-025, ¶¶ 33, 40, 130 N.M. 341, 24 P.3d 776, *overruled on other grounds by Rudy B.*, 2009-NMCA-104, ¶¶ 1, 53. We do not reweigh the evidence or substitute our judgment for that of the district court. *Id.* ¶ 40. We view the evidence in the light most favorable to the lower court's decision, resolve all conflicts and indulge all permissible inferences to uphold that decision, and disregard all evidence and inferences to the contrary. *Id.*

## B.      The Question of Amenability

**{14}** Defendant presented expert opinions and certain evaluation reports. Those opinions favored a finding of amenability. The defense specifically referred the district court to a Juvenile Justice Services Diagnostic/Psychological Evaluation that had been previously received by the court and which found that Defendant was amenable to juvenile sanctions. The defense also specifically referred the court to the CYFD Baseline Assessment prepared for the court in relation to sentencing, which also indicated that Defendant was amenable to juvenile sanctions. The defense discussed a Department of Corrections Sixty-Day Diagnostic Evaluation on Defendant prepared in connection with Defendant's prior referral to juvenile probation and parole. The defense further presented the testimony of Dr. Susan Cave, a clinical psychologist. Dr. Cave testified that Defendant was amenable to juvenile sanctions, and she recommended that juvenile sanctions be imposed.

**{15}** The State did not present expert opinion. The prosecution cross-examined Defendant's expert witness and relied on the circumstances of the offense admitted by Defendant in entering his plea as factors indicating non-amenability. *See* § 32A-2-20(C) (2005).

**{16}** The facts that Defendant admitted, and on which he based his plea, were as follows. Victim was a student at Robertson High School. On the day of the shooting, on school grounds, there was verbal confrontation between Victim and Defendant's brother, with another person present, possibly Defendant. After the verbal confrontation, Victim left the school grounds with several companions. Later, Victim and his companions, who were in one vehicle, met up with Defendant and Defendant's brother and cousin, who were in another vehicle. The parties agreed to meet in an alley near the school where Victim would fight with Defendant's cousin. The fight took place as planned and ended when Victim released Defendant's cousin from a head lock. At that point, words were exchanged and Defendant went to his car, opened the trunk, removed a sawed-off shotgun and loaded it. After comments were made that Defendant would not use the gun, Defendant fired the gun at Victim. At the time he was shot, Victim was facing Defendant with his hands in the air, as indicated by gunshot wounds on the palms of Victim's hands. Victim died of the gunshot wounds the next day.

**{17}** The district court considered each of the factors in Section 32A-2-20(C) by reviewing the facts and circumstances of the offense to which Defendant pleaded guilty. In so doing, the court discussed the facts relevant to each factor and concluded that each factor weighed against a finding of amenability to treatment as a juvenile. The court found that (1) the offense of second degree murder was a serious offense; (2) Defendant's actions in opening the trunk of his car, retrieving an unloaded shotgun, and then loading the gun indicated a degree of premeditation in the commission of the second degree murder; (3) Defendant used a firearm in the commission of the second degree murder; (4) the offense was committed against a person and resulted in personal injury; (5) Defendant exhibited an adult level of sophistication and maturity by getting married; (6) Defendant's prior criminal history, although minimal, involved a firearm; and (7) with regard to the prospects for adequate protection of the public and the likely prospects of rehabilitation, the court noted that Defendant suffers from post-traumatic stress disorder because of this incident and that he did not suffer from the disorder prior to this incident. As a result of weighing each factor in Section 32A-2-20(C) against a finding of amenability, the court found Defendant non-amenable to treatment and ineligible for commitment for a developmental disability or mental disorder and imposed the maximum adult sentence under the plea agreement—seven and one-half years incarceration. Each of the district court's determinations under the statutory factors is supported by the record. Moreover, most of these determinations were based on the undisputed facts presented by the prosecutor as the factual basis for Defendant's plea.

**{18}** We are aware that the court cannot focus entirely on criminal culpability, but must consider the prospects of amenability to treatment within the juvenile system. *Gonzales*, 2001-NMCA-025, ¶ 25. This case essentially sets expert opinion against facts and inference drawn by the court from facts surrounding the crime and Defendant's prior criminal history. "It is the factfinder's prerogative to weigh the evidence and to judge the credibility of the witnesses." *State v. Ryan*, 2006-NMCA-044, ¶ 20, 139 N.M. 354, 132 P.3d 1040. The court was free to disregard expert opinion. *State v. Alberico*, 116 N.M. 156, 164, 861 P.2d 192, 200 (1993); *Gonzales*, 2001-NMCA-025, ¶ 40; *In re Ernesto M.*, 1996-NMCA-039, ¶ 14, 121 N.M. 562, 915 P.2d 318. It appears to us that the court adequately and appropriately addressed all concerns.

**{19}** The question for this Court is not what it would have decided based on the testimony presented below, but whether "any rational fact-finder" could have determined Defendant was not amenable to treatment as a juvenile. *Gonzales*, 2001-NMCA-025, ¶ 40. Based on the evidence, viewed in the light most favorable to the district court's decision and disregarding evidence and inference contrary to that decision, we conclude that any rational factfinder could have determined that Defendant was not amenable to treatment as a juvenile. We hold that the evidence was sufficient to support the court's findings and ultimate determination of non-amenability. Furthermore, there is no basis on which to conclude that the court abused its discretion. We also hold that the court did not err in denying Defendant's motion to recuse.

**CONCLUSION**

**{20}** We affirm the district court.

**{21}    IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**ROBERT E. ROBLES, Judge**

**Topic Index for** _State v. Trujillo_**, No. 28,412**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-HO | Homicide |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-SN | Sentencing |
| | |
| **CD** | **CHILDREN** |
| CD-CC | Children's Code |
| CD-TC | Transfer to District Court |
| | |
| **JG** | **JUDGES** |
| JG-EX | Excusal or Recusal |