This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42017**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JAMARI SANCHEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas Driggers, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Swanson, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Chief Judge.**

**{1}** A jury convicted Defendant Jamari Sanchez of second-degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994), and unlawful possession of a handgun by a person under age nineteen, contrary to NMSA 1978, Section 30-7-2.2 (1994, amended 2022). Defendant appeals and argues (1) the State failed to present sufficient evidence to support Defendant's convictions; (2) the district court abused its discretion by admitting a recorded video conversation between Defendant and his mother; and (3) the

district court erred in finding Defendant not amenable to treatment and in sentencing Defendant. We affirm.

## DISCUSSION[1]

**{2}** The following facts were presented to a jury. Late one evening in September 2021 Victim was shot and killed. Victim's autopsy revealed that he died from a single gunshot to his head, and Victim's death was ruled a homicide. At trial, three witnesses testified that they were in the car with Defendant when he shot and killed Victim.

## I.      Sufficient Evidence Supports Defendant's Convictions[2]

**{3}** Defendant argues that the State failed to present sufficient evidence to support his convictions because it relied on unreliable, uncorroborated accomplice testimony. Defendant recognizes, however, that uncorroborated accomplice testimony is sufficient to uphold a conviction. *See State v. Gutierrez*, 1965-NMSC-143, ¶ 4, 75 N.M. 580, 408 P.2d 503; *State v. Kidd*, 1929-NMSC-025, ¶ 3, 34 N.M. 84, 278 P. 214; *State v. Montoya*, 2016-NMCA-098, ¶ 24, 384 P.3d 1114. Defendant therefore requests that we certify this case to our Supreme Court to overrule existing precedent. Defendant also asks us to certify the question of whether juries should receive an instruction directing them to view the testimony of an alleged accomplice with suspicion and receive it with caution. *Compare* UJI 14-5015 NMRA, *with id.* use note (stating that no instruction on this topic should be given). Refusing to certify, we consider whether sufficient evidence supports Defendant's convictions.

**{4}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Torres*, 2018-NMSC-013, ¶ 42, 413 P.3d 467 (internal quotation marks and citation omitted). In reviewing whether sufficient evidence supports a conviction, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

---

[1]Because this is a memorandum opinion prepared for the benefit of the parties, we provide only those facts necessary to resolve the issues raised on appeal.

[2]The parties dispute whether the three witnesses—the boys in the car with Defendant when he shot Victim—should be considered accomplices. Our resolution of this case does not require us to address the parties' dispute. Assuming without deciding that the three boys were Defendant's accomplices does not direct us to a different conclusion.

**{5}** The district court instructed the jury on the elements of second-degree murder as follows:

> For you to find [D]efendant guilty of second[-]degree murder as a lesser included offense to Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant killed [Victim];
>
> 2. [D]efendant knew that his acts created a strong probability of death or great bodily harm to [Victim];
>
> 3. [D]efendant did not act as a result of sufficient provocation;
>
> 4. This happened in New Mexico on or about the 5th day of September, 2021.

The district court also instructed the jury on the elements of unlawful possession of a handgun by a person under age nineteen as follows:

> For you to find [D]efendant guilty of unlawful possession of a handgun by a person under age 19 as charged in Count 2, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant was in possession of a handgun;
>
> 2. [D]efendant was less than 19 years old;
>
> 3. This happened in New Mexico on or about the 5th day of September, 2021.

Both instructions contain the respective statutory elements for second-degree murder and unlawful possession of a handgun by a person under age 19. *See* § 30-2-1(B); § 30-7-2.2.

**{6}** Based on these instructions and the evidence presented at trial, we conclude that sufficient evidence supports Defendant's convictions. As mentioned above, three witnesses testified at trial that they were with Defendant when he shot Victim. Their testimony supported a conclusion that Defendant initiated a dispute with Victim and asked one of the witnesses to hand him a gun before he shot and killed Victim.

**{7}** Defendant does not dispute this testimony or identify any specific elements of second-degree murder or unlawful possession of a handgun by a person under age 19 that he contends were not sufficiently proven. *See State v. Gallegos*, 2009-NMSC-017,

¶ 31, 146 N.M. 88, 206 P.3d 993 (explaining that it is improper for a defendant to ask the court on appeal for a blanket review of every element for every offense by failing to identify the elements or offense being challenged and by not pointing to evidence in the record to support the challenge). Instead, Defendant argues the only evidence connecting him to Victim's death is uncorroborated accomplice testimony, which he argues is inherently unreliable. He also points to the fact that the forensic evidence could not establish that Defendant's DNA was on the gun or on the bottles of alcohol found in the Mr. Garcia's vehicle from the night Victim was killed. We are, however, bound by precedent, which provides that the use of uncorroborated accomplice testimony can support Defendant's convictions. *See Gutierrez*, 1965-NMSC-143, ¶ 4 ("[A] defendant may be convicted on the uncorroborated testimony of an accomplice"); *Kidd*, 1929-NMSC-025, ¶ 3 ("The uncorroborated testimony of an accomplice is sufficient in law to support a verdict."); *Montoya*, 2016-NMCA-098, ¶ 24 (refusing to depart from binding precedent that holds that uncorroborated accomplice testimony is sufficient to support a verdict). Second, the absence of forensic evidence directly implicating Defendant does not negate the witnesses' testimony. *See State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.3d 1314 (stating that "[a]n appellate court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence.").

## II. The District Court Did Not Abuse Its Discretion in Admitting the Recorded Conversation Between Defendant and His Mother

**{8}** At trial, the State introduced and played a recorded video conversation between Defendant and his mother while they were at the police station as an exhibit. Defendant objected, arguing that the video (1) did not contain any admissions by Defendant, (2) was too prejudicial because it showed Defendant in custody, and (3) contained hearsay from Defendant's mother. On appeal, Defendant only argues that the video should not have been admitted because it was irrelevant and unfairly prejudicial.[3] We address Defendant's arguments below.

**{9}** We generally review a trial court's evidentiary rulings for an abuse of discretion. *State v. Soto*, 2025-NMSC-051, ¶ 31, 580 P.3d 781. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *State v. Ward*, ___-NMSC-___, ¶ 46, ___ P.3d ___ (S-1-SC-40503, Mar. 16, 2026) (internal quotation marks and citation omitted). "We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

## A. The Recorded Conversation Between Defendant and His Mother Was Relevant and Not Unfairly Prejudicial

---

[3]We therefore do not consider whether the video contained inadmissible hearsay. *See State v. Gutierrez*, 1996-NMCA-001, ¶ 3, 121 N.M. 191, 909 P.2d 751 (holding that an issue raised below but not argued in appellate briefs is deemed abandoned and will not be addressed on appeal).

**{10}** Defendant first argues that the recorded conversation he had with his mother was irrelevant because his statements "were not admissions to the crime and so did not further the State's case in that way." Although we agree that Defendant's statements were not admissions to the crime, we disagree that his statements were irrelevant. Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Rule 11-401 NMRA. "Any doubt whether the evidence is relevant should be resolved in favor of admissibility." *State v. Johnson*, 2010-NMSC-016, ¶ 41, 148 N.M. 50, 229 P.3d 523 (internal quotation marks and citation omitted).

**{11}** Here, the parties disputed whether Defendant was in the car when Victim was killed. Whether Defendant was in the car is clearly a consequential fact. As the State notes, if Defendant was not in the car, then it is less likely he could have been the one to shoot Victim. At trial, the State argued that Defendant was in the car the night Victim was killed. Defense counsel, however, maintained that Defendant was not in the car when Victim was shot. In the recorded conversation between Defendant and his mother, the State notes that Defendant's mother asked Defendant: "Were you guys driving on that block at that time?" Defendant shook his head and responded "before, we had went to Anthony's." Although ambiguous, the jury could infer that Defendant's answer indicated that he was in Mr. Garcia's car the night Victim was killed—before going to Anthony's house.

**{12}** The State also makes two other relevancy arguments. First, the State argues that the recorded conversation was relevant because Defendant discussed evidence that the State did not yet have—but would need—in order to convict him. In the recorded conversation, Defendant asks his mother: "don't they need the gun, don't they need the shell casing, don't they need all of that evidence to prove me guilty?" At trial, Detective Frank Torres testified that Defendant's comment caught his attention because that was not "something that [law enforcement] told anybody." Detective Torres suggested that this comment indicated Defendant's awareness that law enforcement did not have the gun or shell casing. We agree with the State that the jury could conclude from Defendant's comments that he knew significant details about Victim's killing despite denying any involvement.

**{13}** Second, the State argues that the recorded conversation included false statements made by Defendant and therefore highlighted Defendant's attempts to deceive law enforcement, which evinces a "consciousness of guilt." *See State v. Martinez*, 2002-NMCA-043, ¶ 17, 132 N.M. 101, 45 P.3d 41 (stating that, among other things, the defendant's attempt to conceal his identity by giving law enforcement officers a false name could show consciousness of guilt); *State v. Faubion*, 1998-NMCA-095, ¶ 13, 125 N.M. 670, 964 P.2d 834 ("[L]ies and misleading actions evidence . . . consciousness of guilt."). We agree. Defendant's conversation with his mother, in the context of the other evidence presented at trial, could indicate Defendant attempted to deceive law enforcement. For these reasons, we conclude that the recorded conversation between Defendant and his mother was relevant.

**{14}** We next consider whether admission of the recorded conversation unfairly prejudiced Defendant. On appeal, Defendant also argues that the recorded conversation was unfairly prejudicial for two reasons. First, he argues that his mother's description of the armed police presence at their home "showed that police thought [Defendant] was dangerous." Second, Defendant argues that his mother's statement that he "should not have said anything" and advising him to "tell police that he wanted a lawyer" invited the jury to infer Defendant was guilty.

**{15}** Before addressing Defendant's specific arguments, however, we determine whether he preserved these arguments for appeal. The parties dispute whether Defendant preserved his unfair prejudice arguments. Defendant contends that he preserved his unfair prejudice argument when he objected to the admission of the recorded conversation pretrial and at trial. The State counters, arguing that Defendant did not preserve the specific theories of prejudice that he now advances on appeal.

**{16}** To preserve an issue for review, "a party must fairly invoke a ruling or decision by the district court." *State v. Franklin*, 2018-NMSC-015, ¶ 8, 413 P.3d 861 (citing Rule 12-321(A) NMRA). "It is essential that the . . . grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." *Id.* (alteration, internal quotation marks, and citation omitted).

**{17}** Our review of the record reflects that Defendant failed to preserve his arguments that his mother's statements describing the armed police presence at their home and advising him to tell police that he wanted a lawyer amounted to unfair prejudice. Although Defendant objected to the recorded conversation at the first pretrial conference and at trial, he failed to alert the district court to the specific nature of the unfair prejudice arguments he makes on appeal. *See State v. Harrison*, 2000-NMSC-022, ¶¶ 22-24, 129 N.M. 328, 7 P.3d 478 (explaining that a defendant's argument on appeal is not preserved when it did not alert the trial court to the specific nature of the objection). We explain.

**{18}** This case is similar to *Harrison*. In *Harrison*, the defendant argued that his hearsay objection was sufficiently clear. *Id.* ¶ 21. Our Supreme Court disagreed, noting that the district court asked defendant clarifying questions because it did not understand the specific nature of his objection. *Id.* ¶ 22. Because the defendant's answer contained different arguments than his arguments on appeal, our Supreme Court held that he failed to preserve his argument on appeal. *Id.* ¶¶ 23-24.

**{19}** Like *Harrison*, Defendant in this case failed to alert the district court to the specific nature of his unfair prejudice objection. During a pretrial conference, Defendant argued that the recorded conversation amounted to unfair prejudice based on unspecified statements from Defendant's mother and because Defendant did not make any admissions in the conversation. The State responded by noting that the video was admissible because it contained statements by Defendant—a party opponent—and asked Defendant to specify the portions he wanted redacted.

**{20}** Also like *Harrison*, the district court in this case attempted to understand the specific nature of Defendant's objections. The court requested that Defendant identify the objectionable statements in the recorded conversations. Despite the court's request, Defendant did not identify any specific statements by Defendant's mother. Instead, Defendant identified a conversation a law enforcement officer had with Defendant. The district court granted Defendant's request to redact that portion of the video. It then ordered Defendant to identify any additional objectionable portions of the video it wanted the State to redact. During the next pretrial conference, the parties appeared to have agreed to a redacted version of the recorded conversation. But at trial, Defendant again objected to the recorded conversation, claiming that it was "too prejudicial," that it was "just to show the Defendant in custody." Because Defendant's unfair prejudice arguments on appeal differ from those he made in the district court, he has failed to preserve his arguments. And because Defendant does not argue plain error on appeal, we need not consider his argument further. *See State v. Jason F.*, 1998-NMSC-010, ¶ 10, 125 N.M. 111, 957 P.2d 1145 (declining to review unpreserved argument when no argument is made regarding exceptions to the preservation requirement).

### III.   Amenability and Sentencing

**{21}** Lastly, Defendant appeals the district court's nonamenability determination and attendant adult sentence. Defendant makes two arguments against the district court's nonamenability determination: (1) the district court failed to make the requisite findings pursuant to NMSA 1978, Section 32A-2-20 (2023); and (2) its findings were not supported by clear and convincing evidence. As for his adult sentence, Defendant argues that the district court failed to comply with NMSA 1978, Section 32A-2-17(A) (2009), by immediately sentencing Defendant as an adult after its nonamenability determination. We address each of Defendant's arguments in turn.

### A.   The District Court's Nonamenability Determination

**{22}** "We review the amenability determination for an abuse of discretion." *State v. Nehemiah G.*, 2018-NMCA-034, ¶ 42, 417 P.3d 1175. A district court abuses its discretion when its decision is "clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). We will also find that a district court abuses its discretion if it merely recites testimony related to the statutory amenability factors, explicitly refuses to consider testimony related to the statutory amenability factors, or simply summarizes the evidence. *Id.* ¶¶ 44, 45.

**{23}** Under Section 32A-2-20(B), the district court may impose an adult sentence upon a youthful offender if it finds: "(1) the child is not amenable to treatment or rehabilitation as a child in available facilities; and (2) the child is not eligible for commitment to an institution for children with developmental disabilities or mental

disorders."[4] To make these determinations, the district court must consider the following eight factors set forth in Section 32A-2-20(C):

(1) the seriousness of the alleged offense;

(2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

(3) whether a firearm was used to commit the alleged offense;

(4) whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted;

(5) the maturity of the child as determined by consideration of the childs' home, environmental situation, social and emotional health, pattern of living, brain development, trauma history and disability;

(6) the record and previous history of the child;

(7) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of procedures, services and facilities currently available; and

(8) any other relevant factor, provided that factor is stated on the record.

**{24}** At the amenability hearing, the district court determined that Defendant was not amenable to treatment or rehabilitation as a juvenile in available facilitates. Defendant argues that the district court's determination was an abuse of discretion because it only made specific findings on the first four crime-related factors, primarily summarizing the remaining three factors. Defendant contends this was insufficient to support the court's nonamenability finding. We disagree. Our review of the amenability hearing indicates that the district court neither refused to consider testimony, nor did it simply summarize the evidence. After considering the parties' arguments and witnesses' testimony, the district court discussed each of the statutory factors. In so doing, the district court took into account the testimony from Probation Parole Officer Rebecca Hoffman and Juvenile Probation Officer Brandon Morales. The district court also stated that it had reviewed the pretrial assessment and the presentence investigation reports. Accordingly, we find that the district court did not fail to make sufficient findings as to factors five, six, and seven, and we are satisfied that the district court's findings served the purpose of amenability findings: "to show that [it] gave proper consideration to the issue of amenability to treatment or rehabilitation." *See State v. Sosa*, 1997-NMSC-032,

---

4Defendant does not argue that he was eligible for commitment to an institution for children with developmental disabilities or mental disorders.

¶ 9, 123 N.M. 564, 943 P.2d 1017, *abrogated on other grounds by State v. Porter*, 2020-NMSC-020, ¶ 7, 476 P.3d 1201.

**{25}** Defendant next argues that the district court's nonamenability finding is not supported by clear and convincing evidence. Specifically, Defendant argues that the evidence related to statutory factors five, six, and seven failed to establish he was not amenable to treatment. "The question," then, "is whether the [district] court's decision is supported by substantial evidence, not whether [it] could have reached a different conclusion." *See State v. Ernesto M., Jr.* (*In re Ernesto M., Jr.*), 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318; *see also State v. Trujillo*, 2009-NMCA-128, ¶ 13, 147 N.M. 334, 222 P.3d 1040 ("We review non[]amenability findings for substantial evidence."). "We do not reweigh the evidence or substitute our judgment for that of the district court." *Trujillo*, 2009-NMCA-128, ¶ 13. "We view the evidence in the light most favorable to the [district] court's decision, resolve all conflicts and indulge all permissible inferences to uphold that decision, and disregard all evidence and inferences to the contrary." *Id.*

**{26}** Defendant argues that the district court's finding that he lacked maturity was not supported by substantial evidence because it considered his home environment and did not take into account his brain development. We disagree. The district court noted, among other things, the following: Defendant "showed zero remorse and zero responsibility for his acts"; Defendant had anger issues and had difficulty regulating his behavior; Defendant had previously attacked a stranger, breaking his nose; and Defendant withdrew from school in order to assist his family, but was of "minimal help" to his mother. This evidence bears on Defendant's maturity. Thus, despite the fact that the district court did not explicitly consider Defendant's brain development, sufficient evidence supports the district court's finding that Defendant lacked maturity.

**{27}** Defendant next argues that the record does not support the district court's comments related to his record and previous history—the sixth factor. Specifically, Defendant points to the fact that the district court believed that he was on "supervised probation . . . for two and a half years prior to this incident." Defendant contends this was a mistake as his "supervised probation" was part of his pretrial release in this case—not for any offense prior to this case. Although we agree that the district court appears to have misunderstood some of the facts surrounding Defendant's "supervised probation," Defendant does not show how the district court's nonamenability finding would have been different. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10 (concluding that the child failed to show how the trial court's determination that the child was not amenable to treatment would have been different had the trial court weighed the statutory factors "using a different methodology"). Moreover, other evidence supported the district court's nonamenability finding. *See State v. Gonzales*, 2001-NMCA-025, ¶¶ 44-46, 130 N.M. 341, 24 P.3d 776 (affirming the district court's nonamenability determination despite its misunderstanding of certain testimony because substantial evidence supported the district court's conclusion), *overruled on other grounds by State v. Rudy B.*, 2009-NMCA-104, ¶¶ 1, 53, 147 N.M. 45, 216 P.3d 810, *rev'd*, 2010-NMSC-045, ¶ 60, 149 N.M. 22, 243 P.3d 726.

**{28}** Defendant also argues that the district court erred in finding that the seventh factor supported a nonamenability finding. Defendant contends that the evidence at the amenability hearing did not support the district court's conclusion that Defendant would not benefit from services "based on the adult probation parole officer's understanding." Defendant points to Officer Hoffman's and Officer Morales' testimony in support.

**{29}** Defendant states that Officer Hoffman testified that it was possible that he would be amenable to treatment, if he chose to be. But Officer Hoffman also testified that Defendant (1) did not comply with authority, (2) was unable to self-regulate his anger, (3) used substances as an aid instead of counseling, and (4) was unlikely to benefit from rehabilitative services given his actions, which suggested he did not believe that he needed any help. Ultimately, Officer Hoffman concluded that Defendant was not amenable to treatment.

**{30}** Defendant also states that Officer Morales testified that he thought Defendant "would do what he[ was] asked to do," if he was "given the opportunity." But Officer Morales also testified that based on the serious nature of Defendant's offense and in light of his age, the Juvenile Probation Office (JPO) did not believe there were available resources within the juvenile department. Accordingly, we find that Officer Hoffman's and Officer Morales's testimony supports the district court's finding that factor seven weighed against finding Defendant amenable to treatment.

**{31}** On the whole, substantial evidence supports the district court's nonamenability determination. Defendant was convicted of a serious, violent offense that he committed in an aggressive manner. There was no evidence that Defendant expressed remorse for his act. Defendant used a firearm to kill Victim. Defendant had a history of anger issues, and he was unable to self-regulate. There was evidence that he had a violent propensity, evidenced by the time he broke a stranger's nose. Finally, as Officer Morales testified, the JPO did not believe there were available resources to help Defendant, nor did Officer Hoffman believe it likely that Defendant would be amenable to treatment. Based on this evidence, we conclude that the district court did not abuse its discretion in finding Defendant nonamenable to treatment.

## B. Sentencing

**{32}** After determining Defendant was not amenable to treatment, the district court immediately proceeded to sentence Defendant as an adult. Defendant argues that this prejudiced him because he was deprived of the opportunity to "further prepare for a separate adult sentencing hearing *after* being found non[]amenable to treatment." In support, Defendant cites *State v. Jose S.*, 2007-NMCA-146, 142 N.M. 829, 171 P.3d 768.

**{33}** In *Jose S.,* this Court reversed and remanded a child's adult sentence based on the district court's failure to correctly apply Section 32A-2-17(A). 2007-NMCA-146, ¶ 23. Section 32A-2-17(A), provides, in relevant part:

The following predisposition reports shall be provided to the parties and the court five days before actual disposition or sentencing:

. . . .

(3) the [adult probation and parole division of the corrections] department shall prepare a predisposition report for a youthful offender concerning the youthful offender's amenability to treatment and if:

. . . .

(b) the court makes the findings necessary to impose an adult sentence pursuant to Section 32A-2-20 . . . , the adult probation and parole division of the corrections department shall prepare a *subsequent* predisposition report.

(Emphasis added.) In *Jose S.*, this Court determined that the district court's failure to follow the Section 32A-2-20 statutory requirements was inconsistent with substantial justice because the absence of the required reports prejudiced the child. 2007-NMCA-146, ¶¶ 20-21. Acknowledging that the child was unable to show prejudice because the reports did not exist, this Court nonetheless held that the "inability to demonstrate prejudice [was] itself prejudicial." *Id.* ¶ 21. This Court explained that the statutorily required report provided to the district court after a nonamenability finding would aid the court in determining "what sentence would be appropriate and what treatment options are available within the adult corrections system." *Id.* ¶ 18 ("Relying solely on an amenability report by the department . . . does not seem adequate when a child is subject to adult sanctions.").

**{34}** We find this case distinguishable from *Jose S.* Unlike *Jose S.*, the district court in this case obtained and reviewed both a predisposition report prior to the nonamenability finding and a presentence report prior to sentencing. Unlike the child in *Jose S.*, Defendant in this case had both reports. Defendant nonetheless argues that he was prejudiced—not due to a lack of reports, as was the case in *Jose S.*—but because the district court proceeded directly to sentencing after finding its nonamenability determination. This, Defendant argues, deprived him of the opportunity to "further prepare" for a separate adult sentencing.

**{35}** We disagree. Although the district court did not strictly comply with Section 32A-2-17(A)(3)(b), we affirm because Defendant has not demonstrated prejudice. The record reflects that the district court provided the parties with notice that Defendant's amenability determination and sentencing would be taking place on the same date. Defendant did not seek to bifurcate the two proceedings or otherwise object to both proceedings taking place on the same day. Moreover, Defendant had a copy of the presentence report for approximately two months before the amenability and sentencing hearing. Indeed, prior to the hearing, defense counsel filed multiple letters written by friends and family members seeking imposition of a juvenile sentence. Defense counsel

also filed a witness list in preparation for the sentencing hearing. We therefore conclude that Defendant was neither thwarted in his attempt to demonstrate prejudice, nor has he demonstrated prejudice. Accordingly, we affirm the district court's sentence. *See Ira v. Janecka*, 2018-NMSC-027, ¶ 40, 419 P.3d 161 (citing *Jose S.*, 2007-NMCA-146, in explaining that "a child must show prejudice from the court's failure to follow the statutory requirements," and concluding that the court's decision to impose adult sanctions despite the absence of the statutorily required predisposition report under Section 32A-2-17(A)(3)(B) was not reversible error because the petitioner failed to show prejudice).

**CONCLUSION**

**{36}** For the foregoing reasons, we affirm Defendant's convictions of second-degree murder and possession of a handgun by a person under age 19, and we affirm the district court's nonamenability finding and adult sentence.

**{37} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**

**Zachary A. Ives, Judge**

**Gerald E. Baca, Judge**