This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37324**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CHRISTOPHER RODRIGUEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Court Judge**

Raúl Torrez, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM
Margaret Crabb, Assistant Attorney General
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Gregory B. Dawkins, Assistant Appellate Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** This appeal is again before us on remand from our Supreme Court in *State v. Rodriguez* (*Rodriguez II*), 2023-NMSC-004, 528 P.3d 614, where the Court instructed us to reach the merits of Defendant Christopher Rodriguez's appeal of the district

court's determination that he was not amenable to treatment or rehabilitation under the Delinquency Act, NMSA 1978, §§ 32A-2-1 to -33 (1993, as amended through 2021). For the reasons that follow, we affirm.

**BACKGROUND**

**{2}**     Below, Defendant pleaded guilty to one count of aggravated burglary (deadly weapon), contrary to NMSA 1978, Section 30-16-4(A) (1963); two counts of conspiracy to commit aggravated burglary (deadly weapon), contrary to NMSA 1978, Section 30-28-2 (1979) and Section 30-16-4(A); three counts of residential burglary, contrary to NMSA 1978, Section 30-16-3(A) (1971); two counts of auto burglary, contrary to Section 30-16-3(B); and one count of unauthorized use of the card of another, contrary to NMSA 1978, Section 58-16-16(B) (1990). The district court then held an amenability hearing and determined Defendant was not amenable to treatment or rehabilitation under Section 32A-2-20, and imposed an adult sentence. Defendant then appealed the district court's determination of nonamenability.

**{3}**     We originally reviewed this matter in *State v. Rodriguez* (*Rodriguez I*), A-1-CA-37324, mem. op. (N.M. Ct. App. Nov. 27, 2019) (nonprecedential), where we dismissed the appeal by holding Defendant had waived his right to appeal under the terms of his plea agreement. *Id.* ¶¶ 8, 10. Because we did not give an overview of the facts presented at the amenability hearing in *Rodriguez I*, we begin with an overview of the factual and procedural history of the case.

**{4}**     Starting in 2015, Defendant and his friends drove up and down residential blocks in the Northeast Heights neighborhoods of Albuquerque, checking for vehicles with unlocked doors and easily accessible homes on "almost [a] nightly" basis. They referred to their criminal conduct as "car and house mobbing." Defendant explained that his codefendant's later identified him as the second-in- command because he and Jeremiah King, another codefendant were known as the "crazy" ones in the group, the ones likely "to take it to the max," and that Defendant took things to "extremes because he thought it was cooler."

**{5}**     On June 26, 2015, Defendant and approximately eight others engaged in "car and house mobbing" that resulted in the death of Steven Gerecke. The group was intoxicated with alcohol and drugs, and proceeded to break into and steal cars, and burglarize homes, while moving "as a pack." King was the leader of the group and carried a gun. A codefendant reported that "[D]efendant . . . wanted to take the gun that night," whereas Defendant denied requesting the gun and stated he had no intention of using it.

**{6}**     Defendant and others in the pack entered a residence on Kelly Ann Rd., NE, taking the homeowner's television, cell phone, car keys, and a wallet with credit cards. The homeowner tried to defend his property and King, armed with a 9 mm gun, fired three rounds at the homeowner, not striking him. The pack fled the residence in a stolen SUV, which they took turns driving.

**{7}** Undeterred by the shooting, the pack drove to another neighborhood where a witness reported seeing seven to ten subjects "wearing black bandanas, hats, and skinny jeans" enter his neighbor's house through the garage. The pack left the garage and moved onto another residence at the northwest corner of the street, at which point the witness lost sight of the pack. Ten minutes later, the witness heard three gunshots.

**{8}** Before these shots were fired, the pack had made its way up to another residence on Chihuahua, NE, where Defendant and two codefendants entered a residence. Moments later, King shot and killed Steven Gerecke. Defendant and other members of the pack fled the scene with stolen property and continued mobbing homes and vehicles, stealing a Lexus SUV and Ford Explorer. Later that day, Defendant and a codefendant were captured on surveillance cameras using Mrs. Gerecke's stolen debit card at a McDonald's and attempting to purchase clothing and other merchandise at a Walmart.

**{9}** Defendant continued mobbing until he was apprehended two weeks later. Because he was sixteen years old at the time, Defendant was detained at the Bernalillo County Youth Services Center (BCYSC). A mere month after his apprehension, Defendant was implicated in an escape plan involving other detained juveniles.

**{10}** A grand jury indictment charged Defendant with forty crimes, including an open count of first degree murder. Defendant later pleaded guilty to multiple crimes as previously detailed. In exchange for his guilty pleas, the State dismissed the remaining charges of the indictment.

**{11}** Aggravated burglary is classified as a "youthful offender" offense, *see* § 32A-2-3(J)(1)(k), and therefore the parties agreed that if the district court determined Defendant was not amenable to treatment as a juvenile, Defendant's sentences would run consecutive for a period of up to thirty-one-and one-half years. The district court ordered the Juvenile Probation and Parole Office (JPPO) to prepare a predisposition report on Defendant's amenability to treatment, as provided for under Section 32A-2-17(A)(3).

**Amenability Hearing**

**{12}** Defendant was eighteen years old at the time of his May 12, 2017, amenability hearing. The State presented the testimony of Albuquerque Police Department Detective Jodi Gonterman, and Bernalillo County JPPO Officer Joan Castillo.[1] Detective Gonterman briefly described her involvement in the investigation of the events that led to Defendant's arrest. The key elements of Detective Gonterman's testimony are included above in the background summary of this opinion and will be discussed further in the analysis section of this opinion.

**{13}** JPPO Officer Castillo testified that she was familiar with Defendant and met with him every week for approximately two years while Defendant was detained at BCYSC

---

1JPPO Officer Castillo did not testify as an expert witness.

awaiting trial on this case and simultaneously serving probation in another. The purpose of her visits with Defendant, as with other detained juveniles, was to ensure he was "doing okay" and to answer any questions he might have regarding court hearings.

**{14}** JPPO Officer Castillo prepared Defendant's baseline assessment and amenability recommendation based on information from "all the professionals that had been involved with [Defendant,]" including his history with the Children, Youth and Families Department (CYFD), any treatment he may have received, how he interacted with that care, his education, and upbringing. She also reviewed a forensic evaluation report introduced into evidence during the hearing that was prepared by Dr. Christine Johnson, Ph.D., a board certified clinical and forensic psychologist.

**{15}** While at BCYSC, Defendant participated in voluntary programs and therapies designed to comfort juveniles, help them get a head start on services they would need in the future, and to some extent address trauma and anger issues. Defendant also engaged in ten to fifteen fights with other juveniles while at the BCYSC, four of which resulted in separate delinquency referrals.

**{16}** As detailed in her written report, JPPO Officer Castillo reviewed Defendant's traumatic childhood with the court. She also testified Defendant told her he was interested in completing counseling, and obtaining his GED or high school diploma.

**{17}** Consistent with her report, JPPO Officer Castillo testified that Defendant was amenable to treatment in available CYFD facilities. However, in light of the fact that Defendant's participation in services in a CYFD facility would not be mandatory, JPPO Officer Castillo conceded that Defendant would have to voluntarily engage in the services in order to be rehabilitated. JPPO Officer Castillo's report was reviewed and approved by Jeanne Masterson, Associate Deputy Director for Field Services; Kelly Joe Parker, Juvenile Probation Chief; Stephanie Kauffman, Juvenile Probation Supervisor; and Elizabeth Hamilton, Behavioral Health Clinician Supervisor.

**{18}** The district court inquired, and JPPO Officer Castillo affirmed, that Defendant had inconsistently sought voluntary counseling from a BCYSC licensed counselor, CYFD received police reports regarding four of the fights Defendant engaged in while detained at BCYSC, and that CYFD considered the four new referrals as new offenses, three of them in violation of Defendant's probation.

**{19}** Ten days after the amenability hearing, the district court issued its order addressing the factors enumerated in Section 32A-2-20(C) and finding Defendant not to be amenable to treatment as a juvenile in available facilities. We discuss the district court's relevant findings and conclusions in more detail below. The district court sentenced Defendant to thirty-one years and six months, with seventeen years and six months suspended.[2]

---

2This Court held in *Rodriguez I*—after raising the issue sua sponte—that Defendant waived his right to appeal the district court's determination of amenability under the stipulated waiver of defenses and appeal

**DISCUSSION**

**{20}** Defendant's sole argument before us is his contention that the district court abused its discretion when it found by clear and convincing evidence that he was not amenable to treatment in available facilities. Specifically, Defendant contends the district court "ignor[ed] the unanimous testimony" that he was amenable to treatment. We disagree.

## I. Standard of Review

**{21}** "We review the amenability determination for an abuse of discretion." *State v. Nehemiah G.*, 2018-NMCA-034, ¶ 42, 417 P.3d 1175. We "will find an abuse of discretion when the district court's decision is clearly against the logic and effect of the facts and circumstances of the case" or when the district court "exercises its discretion based on a misunderstanding of the law." *Id.* (text only) (citation omitted). "We view the evidence in the light most favorable to the [district] court's decision, resolve all conflicts and indulge all permissible inferences to uphold that decision, and disregard all evidence and inferences to the contrary." *State v. Trujillo*, 2009-NMCA-128, ¶ 13, 147 N.M. 334, 222 P.3d 1040.

## II. Amenability Determinations

**{22}** A district court imposing an adult sentence on a child under Section 32A-2-20(B) must make two findings: "(1) the child is not amenable to treatment or rehabilitation as a child in available facilities; and (2) the child is not eligible for commitment to an institution for children with developmental disabilities or mental disorders." The court shall consider the following eight factors in making its amenability determination:

> (1)     the seriousness of the alleged offense;
>
> (2)     whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
>
> (3)     whether a firearm was used to commit the alleged offense;

---

of the plea and disposition agreement. *See Rodriguez I*, A-1-CA-37324, mem. op. ¶¶ 6, 8. Because the district court's sentence satisfied the terms of the waiver provision in the plea and disposition agreement, this Court concluded that it was precluded from reviewing the merits of Defendant's appeal, and dismissed the case. *See id.* ¶¶ 9-10.

On certiorari review of *Rodriguez I*, our Supreme Court held "that a juvenile's guilty plea may neither waive the right to an amenability determination, nor can it waive the right to appeal the outcome of an amenability determination," thus reversing our holding. *Rodriguez II*, 2023-NMSC-004, ¶ 25 (citation omitted). On remand, our Supreme Court instructed this Court to reach the original question presented in Defendant's appeal—whether the district court erred when determining that Defendant was not amenable to treatment or rehabilitation. *Id.* ¶¶ 2, 26.

(4)     whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted;

(5)     the maturity of the child as determined by consideration of the child's home, environmental situation, social and emotional health, pattern of living, brain development, trauma history and disability;

(6)     the record and previous history of the child;

(7)     the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of procedures, services and facilities currently available; and

(8)     any other relevant factor, provided that factor is stated on the record.

Section 32A-2-20(C). "To consider a factor, the court must think about this evidence with a degree of care and caution. Further, the court must make findings as to each factor." *Rodriguez II*, 2023-NMSC-004, ¶ 11 (internal quotation marks and citation omitted).

**{23}**   Here, the district court entered extensive findings based on the testimony, exhibits, and arguments of counsel prior to arriving at the conclusion that Defendant should be sentenced as an adult. The district court considered Defendant's baseline assessment and chronological offense history, Dr. Johnson's forensic evaluation report, and the testimony of both JPPO Officer Castillo and Detective Gonterman when determining that Defendant was not amenable to treatment or rehabilitation as a child in available facilities. We briefly outline the district court's consideration of the following factors and the weight given to each.

**{24}**   Seriousness of the alleged offense: The district court noted that the fact "a life was lost during the course of the group's activities on June 26, 2015," demonstrated the seriousness of the actions of the group. *See* § 32A-2-20(C)(1). Observing that the State did not pursue murder or similar charges against Defendant for lack of evidence, the court nonetheless determined that Defendant's plea to aggravated burglary with a deadly weapon was a serious offense.

**{25}**   Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner: The district court expressly observed that the evidence established that the group met and planned their mobbing activities, persisted in their actions even after one person was shot at and another killed, and that the group targeted homes at a time when people were likely to be home, thus increasing the likelihood of confronting victims. *See* § 32A-2-20(C)(2).

**{26}** Whether a firearm was used to commit the offense: Under this third consideration, the district court acknowledged that Defendant did not personally use a firearm, but observed that Defendant knew King was armed with a gun, and knew the gun was used previously the same night, yet continued in the mobbing, and entered a guilty plea to aggravated burglary *with a deadly weapon. See* § 32A-2-20(C)(3).

**{27}** Whether the alleged offense was against persons or property: The district court noted that although Defendant engaged in criminal activity that resulted in the killing of Mr. Gerecke, Defendant's convictions were for crimes against property and that Defendant himself did not physically harm anyone. *See* § 32A-2-20(C)(4).

**{28}** The maturity of the child: The court extensively discussed the maturity of Defendant as determined by his home, environmental situation, social and emotional health, pattern of living, brain development, trauma history, and disability. *See* § 32A-2-20(C)(5**)**. In particular, it noted that both parents were in and out of prison, Defendant witnessed domestic violence as well as his father's death from a heroin overdose, and the family moved frequently from one town or city to another. In addition, Defendant had used drugs and alcohol since the sixth grade and was doing so daily by the time he was sixteen.

**{29}** The record and previous history of the child: The district court considered that Defendant's actions resulted in eleven referrals to CYFD, including four while detained in the present case. *See* § 32A-2-20(C)(6). Some of his referrals were handled informally, though Defendant was given two years of probation for receiving/transferring a stolen motor vehicle. The district court observed that three of Defendant's newest referrals violated the terms of his probation. The district court took note of Dr. Johnson's report that Defendant's escalating intrusiveness while burgling had a high potential for physical harm to others and that Defendant's criminal history escalated from property crimes to the more recent referrals for assault and battery while detained at BCYSC.

**{30}** The prospects for adequate protection of the public and the likelihood of rehabilitation: To this end, the court noted again that Defendant had several new referrals while detained for this case, even though Defendant admitted to Dr. Johnson that he knew he should stay out of trouble. *See* § 32A-2-20(C)(7). The district court considered Dr. Johnson's recommendations that Defendant receive ongoing intervention to address the issues from his past, that both JPPO Officer Castillo and Dr. Johnson reported Defendant did not consistently participate in voluntary counseling, and that the programs and counseling available to Defendant if he was sentenced as a child would be entirely voluntary. Dr. Johnson also recommended close supervision when Defendant returns to the community for a substantial amount of time. The district court considered Dr. Johnson's assessment of Defendant's risk of recidivism, noting that Dr. Johnson categorized Defendant as having nineteen of twenty-four risk factors for aggressive recidivism, thirteen of them in the high risk category, and almost half of the factors being static and not subject to change. Dr. Johnson concluded Defendant was at "high risk for further violence, particularly in the [next six to twelve] months" and at an "elevated risk for violence in the community." The district court also considered

JPPO Officer Castillo's testimony that programs and counseling at CYFD facilities are not mandatory.

**{31}** After weighing each of the above factors, the district court concluded Defendant had a "lengthy criminal history which demonstrates an escalation in the serious[ness] of his crimes and the increased likelihood of harm to others." Moreover, the court was persuaded by Dr. Johnson's report that Defendant is at high risk of recidivism and future violence, and that "many of the factors lending to his future risk of violence are fixed and cannot be changed." Because Defendant did not make consistent use of the counseling available at BCYSC, the district court was not convinced by testimony that Defendant would take advantage of voluntary counseling if committed to CYFD and concluded Defendant failed to demonstrate a willingness or desire to reform his behavior, embrace pro-social goals, or fully take advantage of the help available. The district court concluded Defendant was not amenable to treatment as a juvenile in available facilities.

**{32}** Defendant relies on *Nehemiah G.* to argue the district court erroneously rejected the unanimous expert opinion that Defendant would be amenable to treatment in the juvenile system. To the contrary, the district court's written decision indicates the court considered JPPO Officer Castillo's opinion that Defendant's rehabilitation in a juvenile facility would be dependent on his voluntary participation in services and reports that Defendant did not consistently participate in counseling for the two years he was detained at BCYSC. To the extent JPPO Officer Castillo opined Defendant would voluntarily participate in rehabilitative counseling, the district court, as the ultimate fact-finder, was not required to adopt her opinion, and the district court's written order provides a rational basis for not doing so. *See Nehemiah G.*, 2018-NMCA-034, ¶ 56 (recognizing that "a district court conducting an amenability hearing may disregard" evidence presented by either party, including the testimony of experts).

**{33}** The district court's order similarly establishes that it considered Dr. Johnson's assessment regarding Defendant's nineteen out of twenty-four risk factors for aggressive recidivism, thirteen of them in the high risk category, almost half of the factors being static and not subject to change, and Dr. Johnson's opinion that Defendant was at "high risk for further violence," and "elevated risk for violence in the community." *See Medler v. Henry*, 1940-NMSC-028, ¶ 20, 44 N.M. 275, 101 P.2d 398 ("[I]t cannot be said that the trier of facts has acted arbitrarily in disregarding such testimony, although not directly contradicted," when "legitimate inferences may be drawn from the facts and circumstances of the case that contradict or cast reasonable doubt upon the truth or accuracy of the oral testimony."). Given the extensive findings in the district court's order, all supported by evidence at the hearing, we cannot say that the district court's finding of nonamenability was "against the logic and effect of the facts and circumstances of the case" or "a misunderstanding of the law." *Nehemiah G.*, 2018-NMCA-034, ¶ 42 (internal quotation marks and citation omitted). Therefore, we hold that the district court did not abuse its discretion when finding by clear and convincing evidence that Defendant was not amenable to treatment in the juvenile system.

**CONCLUSION**

**{34}** Based on the foregoing, we conclude the district court did not abuse its discretion and affirm the finding of nonamenability.

**{35}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**J. MILES HANISEE, Judge**